## Richmond.

### TRUMBO'S ADM'R v. CITY STREET-CAR COMPANY.

#### March 23d, 1893.

1. APPELLATE PRACTICE—*Instructions—Exceptions.*—Where there is no formal bill of exceptions signed by the judge of the trial court to a ruling thereof upon instructions asked to be given to the jury, this court cannot consider the propriety of such ruling, though the record shows that the counsel did, during the trial, make objection to such ruling. *Fry* v. *Leslie*, 87 Va. 275.

2. CONTRIBUTORY NEGLIGENCE—*Children—Parents.*—In an action for damages for negligent injuries to a child, the contributory negligence of its parent is not imputable to the child. The law fixes no arbitrary age at which the child becomes capable of contributory negligence; but, between the ages of seven and fourteen, the presumption is that he is *non sui juris.*

3. NEGLIGENT INJURIES—*Case at bar.*—Considering the evidence disclosed by the record in the case here—

HELD:

> There was no negligence on the part of the defendant company, whereby its car ran over and killed the plaintiff's intestate.

Error to judgment of circuit court of Augusta county, rendered June 3d, 1892, in an action of trespass on the case wherein Logan Turner, sergeant of the city of Staunton, and as such administrator of Grover Cleveland Trumbo, deceased, was plaintiff, and the City Street-Car Company was defendant. Opinion states the case.

*Charles Curry*, for plaintiff in error.

*R. P. Bell*, for defendant in error.

LEWIS, P., delivered the opinion of the court

This was an action to recover damages for the alleged negligent killing of the appellant's intestate. The latter, at the time of his death, was a child of tender years. His death was caused by his being run over by a car of the defendant company on the 30th of October, 1890, in the city of Staunton.

There were two trials in the court below. At the first there was a verdict for the plaintiff for $1,222.85, which, on motion of the defendant, was set aside. At the second there was a verdict for the defendant, upon which the judgment complained of was entered.

The errors assigned are, (1) the setting aside of the first verdict; (2) the refusal of the trial court to give, without modification, the first, second, and ninth instructions offered by the defendant; and (3) the refusal to set aside the second verdict on the ground of its being contrary to the law and the evidence.

All the instructions, including the modifications of those just mentioned, are copied into the transcript; but, as no exception was taken to the action of the court in regard to them, they cannot be considered here. It is true the bill of exceptions which was taken to the granting of a new trial, wherein the evidence on both sides is certified, recites that the plaintiff objected to the modifications of the instructions; but that was not enough. To obtain the benefit of the objection in the appellate court, a formal exception was necessary. In *Scott* v. *Lloyd*, 9 Pet. 418, (cited approvingly by this court in *Fry* v. *Leslie*, 87 Va. 269,) the defendant's counsel objected to a certain question being put to one of the witnesses, and said he excepted to the ruling of the court, but no exception was actually prayed or signed by the judge; and Chief Justice Marshall, in delivering the opinion of the Supreme Court, said the exception could not be considered as actually taken, but must be considered as having been abandoned. And the same rule applies here.

The first question, then, is whether, independently of the instructions, there was error in setting aside the first verdict; and, in determining this question, we must, according to the rule laid down in *Muse* v. *Stern*, 82 Va. 33—which is now the statutory rule in this state—look to *all* the evidence at the first trial, although the case comes up on a certificate of evidence. *Stearns* v. *City of Richmond*, 88 Va. 992.

There is no question of imputed negligence in the case— that is to say, it is not contended by the defendant that if the parents of the child were guilty of negligence in allowing it to go unprotected on the street, such negligence is imputable to the child; nor is that question an open one in this court, for the doctrine of imputed negligence has been repudiated in Virginia, as it has been in most of the states of the union. *N. & P. R. R. Co.* v. *Ormsby*, 27 Gratt. 455; *N. & W. R. R. Co.* v. *Groseclose's Adm'r*, 88 Va. 267; *s. c.*, 29 Am. St. Rep. 718.

It appears that the deceased, at the time of his death, was only five years and nine months of age, nor does the evidence show that he was then *sui juris*, or capable of contributory negligence, if, indeed, that be possible with a child of that age. The law does not fix any arbitrary age at which a child reaches that point, since some reach it earlier than others. Between the ages of seven and fourteen years the presumption is that a child is *non sui juris*, but evidence is admissible to show the contrary. The question is, therefore, one of fact, to be determined by the jury upon the particular facts of each case, unless the child be of such very tender years as that its incapacity to exercise any degree of care as to its personal safety can be declared as matter of law. 2 Thomp. Neg. 1181; *Pratt, &c., Co.* v. *Brawley*, 83 Ala. 371; *Stone* v. *Dry Dock, &c., R. R. Co.*, 115 N. Y. 104; *Farris* v. *Cass Ave., &c., R'y Co.*, 80 Mo. 325; *Westbrook* v. *Mobile, &c., R. R. Co.*, 14 Am. St. Rep. 590, *note*; 4 Ency. of Law, 43, and cases cited.

But, assuming that the deceased was without fault—that is, incapable of exercising judgment or discretion—was the company guilty of culpable negligence? We think not.

The accident occurred on a narrow and frequented street, near one of the railroad depots. A few minutes before the accident the car that ran over the deceased was standing near the depot, waiting for passengers. The mules hitched to the car became frightened by the "popping off" of an engine, and started up the street at quite a rapid pace. The point at which the accident occurred is about fifty yards from where the car started, and for about one half of that distance the track is on a down grade. The evidence is conflicting as to the speed at which the car was going when the accident occurred. One of the plaintiff's witnesses testified that it was going at the rate of ten or twelve miles an hour; but, according to the weight of the evidence, it was not going so fast, perhaps only a little faster than the maximum speed allowed by the city ordinance—viz., six miles an hour.

There were six witnesses examined for the plaintiff. Only one of them, however, actually saw the accident when it happened, and his testimony is strongly in the defendant's favor. He testifies that he was driving a coal-cart up the street, just ahead of the car; that the deceased ran into the street, and alongside the cart for a short distance, and then, upon the approach of the car, "jumped on the railway track, right in front of the mules"; that the driver called to him to get out of the way, and attempted to stop the car in time to avoid the accident, but couldn't do so.

The driver testifies, as a witness for the defendant, that the child ran in front of the car from in front of the coal-cart, and that, although he pulled the mules to one side, and pulled the car off the track, he was unable to avoid the accident; that the child was only three or four feet ahead of the mules when he ran on the track; and this statement is corroborated by other witnesses.

There is some discrepancy in the testimony of the witnesses as to where the child came from—some saying that he came from one side of the street, others that he came from the opposite side. But this is not very material, in view of the established fact in the case that the deceased almost threw himself under the wheels of the car, thus rendering it impossible for the driver to stop the car in time to avoid the accident.

There was no positive evidence at the first trial that the driver was not keeping a careful lookout, and the inference from his own testimony is that he was not negligent in that particular. The witness, Christopher, an employee of the company, who was riding on the front platform of the car with the driver, testifies as follows: "The first I saw of the boy he was five or six feet from the fence, on the left-hand side of the street, running towards the coal-cart. He ran against the cart, and then turned and ran upon the track, and the mules struck him. He was only a few feet from the mules when he started back. The car could not have been stopped in time to save him after he started across." And he added: "Looking up the street at the time, everything was perfectly clear. If the child had been there, we could have seen him."

It is true there was evidence for the plaintiff, on the second trial, tending to show that just before the accident the driver was not looking ahead, but at a female, who was standing at a right angle to the course in which he was driving; but this he positively denied, and, in reviewing the evidence on the second trial, the rule of a demurrer to evidence applies.

The allegation in the declaration that the mules were wild and unbroken, and that the bridles and harness were defective, is not only not sustained, but is disproved by the plaintiff's own evidence.

In short, we are of opinion that none of the assignments of error are well taken. Except in the particular just mentioned,

the evidence on both trials was substantially the same; and if there was no error in setting aside the first verdict, there was none in approving the second.

The judgment is therefore affirmed.

JUDGMENT AFFIRMED.