## Wytheville.

NORFOLK RAILWAY AND LIGHT COMPANY v. HIGGINS.

June 11, 1908.

1. INFANTS—*Contributory Negligence—Presumption—Proof of Capacity—* *"Average of His Age."*—The law presumes that an infant between the ages of seven and fourteen years cannot be guilty of contributory negligence, but this presumption may be overcome by evidence and circumstances showing his capacity and maturity. *Age is an important element* in considering his capacity, but is not the sole criterion, and an instruction which tells the jury that this presumption may be overcome by evidence that the infant has "more than the average capacity of children of his age," instead of leaving them to determine the capacity from all the facts and circumstances of the case, is calculated to mislead and confuse the jury, and hence is erroneous.

2. INSTRUCTIONS—*Evidence to Support.*—It is error to refuse to give an instruction which sets forth a party's theory of his case when there is evidence tending to prove it.

3. INSTRUCTIONS—*Inconsistent or Conflicting.*—All error is presumed to be prejudicial, and when conflicting or inconsistent instructions have been given the verdict of the jury should be set aside and a new trial granted, as it cannot be told whether the jury were guided by the correct or the incorrect instructions.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*J. R. Tucker* and *H. W. Anderson,* for the plaintiff in error.

*Jeffries & Lawless* and *Brooke & Elliott,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action was brought by defendant in error to recover damages of the plaintiff in error, the defendant in the court below, for personal injuries alleged to have been inflicted upon the plaintiff by reason of the negligence of the defendant.

The accident out of which the action arose, as disclosed by the evidence certified in the record, viewed under the rule governing its consideration in this court, occurred under the following circumstances: The defendant operates electric cars in the city of Norfolk, upon two parallel tracks, laid in Church street which runs approximately north and south; the cars going in a southerly direction passing along and over the western track, and the cars going in the other direction passing over the eastern track, this accident happening a short distance north of the intersection of Church street and Charlotte street, which last-named street runs approximately east and west. The wheel of the car which inflicted the injury to plaintiff was the front wheel of the front truck of an Ocean View car, going south on Church street, and following a city car going in the same direction, making a number of stops at the intersecting streets, and causing the Ocean View car, which did not do city business, to proceed at a slow rate of speed. The city car had stopped just north of Charlotte street at the time that the Ocean View car had reached a point about thirty feet north of the place at which it and all cars operating on Church street were required to stop before crossing Charlotte street, and when the Ocean View car reached that point and was slowing down to make the stop required at Charlotte street, it was met and passed by a wagon which was going north along and upon the eastern track of the defendant laid in Church street. Just as the rear end of this wagon passed the front platform of the Ocean View car, the motorman, who was looking forward, saw to his right and to the rear of his front vision an object dart in from behind the wagon and towards his car; whereupon, he

applied the brakes, and turning his head saw the object more distinctly between the two tracks, and within a moment of time heard the scream of some one, and brought his car to a stop, within six feet of the point at which the plaintiff had collided with the side of the car and the front wheel of the truck had passed over his foot, so crushing it as to necessitate amputation above the ankle.

The plaintiff, a boy "just a little over eleven years" of age, was taking a ride on the rear end of a wagon passing along Church street in an opposite direction to that in which the car was going, and his statement is that he jumped off the rear of the wagon and started to go diagonally across Church street toward the track on which this Ocean View car was proceeding in a southerly direction, his objective point being a ball game on a vacant lot on Charlotte street; and that he had not had time to start into a run, and is not sure that he ever got on the track on which the car was proceeding before he came in contact with the car and fell.

The plaintiff had lived all his life in the city of Norfolk, with a double-track car line in front of his home, on which cars were constantly passing in both directions. He had been accustomed to play out in the street for several years. He knew that there was a double-track line of cars on Church street. He had been accustomed to play around the streets, steal rides on the back of wagons, probably having done so, as he says, a hundred times. He had been going to school for about three years, and at the time of this accident was advanced in his studies as far as the "Fourth Reader." He was a boy of enough intelligence to understand that street cars were dangerous and to be avoided, and of enough intelligence to be sent by his mother on errands to stores around in the city; and, on the day of the accident to him, he had been sent by his mother on an errand to a certain store in the city, and had gone several blocks out of his way in order to take a ride on the back of a wagon passing along Church street, and to go by and see a ball game before attending to the errand on which he was sent.

None of the witnesses for the plaintiff state positively that he ever reached the track in front of the car, while the motorman and other of defendant's witnesses do testify positively that he was never on the track in front of the car at any time. There is conflict in the evidence as to whether the plaintiff jumped off the wagon spoken of as passing on the eastern track in an opposite direction to that in which the car in question was going, or came from another point on Church street where he had just jumped off the rear end of a pie wagon traveling diagonally across Church street—"kind of jogging along" as he says—passed around the rear end of the wagon just passing the front platform of the car, as stated and collided with the car; but it tended to prove, that whether he jumped off the rear of the one wagon or the other he was not within the vision of the motorman keeping watch for travelers who might get on the track in front of his car, until he was between the two tracks and to the rear of the position occupied by the motorman. The motorman testified that the fender and front part of his vestibule had passed the plaintiff before he came in contact with the car, and this witness is corroborated by three others, who state that the point of contact was back of the fender and on the side of the car back of the motorman, or at a point where the body of the car and the step leading from the vestibule to the ground join; so that the evidence strongly tended to prove that the plaintiff collided with the side of the car, and was not run into by the car as charged in the declaration.

There is nothing in the evidence tending to sustain the judgment of the lower court, on the ground that the car was running at an unlawful rate of speed at the time of the accident, or the failure of the defendant's servants in charge of the car to give the proper signals; the uncontradicted proof being, that the motorman stopped his car just after the front wheel passed over plaintiff's foot, and before the rear wheel of the front truck reached the point of the accident, and that if no accident had happened the car would have stopped thirty feet from the place of the accident, this being the regular stop for all cars, thus

conclusively showing that the car was going at a slow rate of speed, whatever might have been its speed when approaching that point and some distance away.

Upon the foregoing state of facts, which the evidence tended to prove, the first question for the determination of the jury, under proper instructions from the court as to the law applicable to these facts, was, whether or not the defendant had been guilty of negligence causing the injury to the plaintiff? In other words, whether or not the servants of the defendant operating the car which inflicted the injury saw, or could, by the exercise of reasonable care, have seen the plaintiff approaching the railway track or car, with intent to cross the track in front of the car, in time to have avoided injuring him?

This question was submitted to the jury by an instruction asked for by the plaintiff, with this addition: "But the jury are further instructed that the law presumes that an infant between seven and fourteen years of age cannot be guilty of contributory negligence, which presumption may be overcome by evidence that the infant has more than the average capacity of children of his age; and in this case this presumption must be overcome by evidence establishing the intelligence, maturity and capacity of the plaintiff before contributory negligence on his part can be relied on as a defense."

Exception was taken to this instruction, directed specifically to that portion of it defining the law as to the contributory negligence of infants.

We are of opinion that the instruction is open to the objection made to it. The language of the instruction has not, as counsel for the plaintiff claim, been "adopted by this court." Undoubtedly the question of capacity was a question for the jury, but it was to be determined under proper and correct instructions, leaving it to the jury for determination from the evidence before them.

The instruction is very different, not only in language but in substance, from the instruction approved in *Roanoke* v. *Shull*,

97 Va. 419, 34 S. E. 34, 75 Am. St. Rep. 791.   In that case, as in this, the plaintiff was an infant between eleven and twelve years of age, and the instruction approved was as follows: "The court further instructs the jury that the conduct of an infant is not, of necessity, to be judged by the same rules which govern that of an adult; that while it is the general rule in regard to an adult, or grown person, that, to entitle him or her to recover damages for an injury resulting from the fault or negligence of another, he or she must have been free from fault, such is not the rule in regard to an infant of tender years. The care and caution required of a child is according to its maturity and capacity wholly, and this is to be determined by the circumstances of the case, and the evidence before the jury; and the law presumes that a child between the ages of seven and fourteen years cannot be guilty of contributory negligence, and in order to establish that a child of such age is capable of contributory negligence, such presumption must be rebutted by evidence and circumstances, establishing her maturity and capacity."

In *Trumbo* v *City St. Car Co.*, 89 Va. 780, 17 S. E. 124, the opinion says, that the question, whether or not a child between seven and fourteen years of age is *sui juris*—*i. e.*, of capacity to exercise care as to its personal safety—is a question of fact to be determined by the jury upon the particular facts of each case, unless the child be of such very tender years as that its incapacity to exercise any degree of care as to its personal safety can be declared as a matter of law.

In the case before us, the instruction under consideration undertook to determine the standard by which the capacity of the plaintiff was to be fixed, and made his standard the "average capacity of children of his age."   While age is, of course, a circumstance to be considered in determining the capacity of a child between seven and fourteen years of age, it is by no means the sole criterion; but that question, as all the authorities agree, should be left to the jury, to be determined by the

circumstances of the particular case, unincumbered by language in the instructions from the court of doubtful interpretation as to what is meant by "average capacity of children of his age," and as to how this "average capacity" of other children is to be determined. The instruction in question was, in this respect, plainly calculated to confuse and mislead the jury, and the objection of the defendant thereto should have been sustained. Authorities *supra,* and also 1 Thomp. on Neg., sec. 308; 1 Shear. & Red. on Neg., sec. 73; Beach on Con. Neg., secs. 21b, 136.

The declaration in the case contains four counts, in each of which it is charged, that "the cars of the said defendant company then and there ran and struck with great force and violence upon and against the said plaintiff, whereby he was greatly bruised, hurt, maimed, mangled"; and the defendant sought to have the jury told that the plaintiff was required to prove his case as laid in the declaration, and that an averment in the declaration that the plaintiff was injured in a particular way could not be supported by proof that he was injured in an entirely different manner; and, therefore, that if the jury believed that the accident happened in the manner in which the evidence tended to show, by the plaintiff himself running or walking into the side of the car, there could be no recovery upon the allegations in the declaration. But the court, on objection being made by the plaintiff to the instruction as asked, modified it so as to read as follows:

"The court instructs the jury, that if you believe from the evidence that the plaintiff, instead of being run into and struck by the car, as charged in the declaration, himself ran or walked into the side of the car, and was injured without the fault of the motorman, or if you believe from the evidence that it is just as probable that the accident happened in this way, and without the fault of the motorman, as in the way charged in the declaration, your verdict should be for the defendant."

This instruction, as offered, also told the jury, rightly, that if the defendant was guilty of no negligence, then there could

be no recovery—a proposition which the court submitted to the jury in another instruction; but the instruction, as given, erroneously withheld from the consideration of the jury the theory of the defendant, which the evidence tended to prove, that the plaintiff jumped from the rear end of a wagon, with his back to the approaching car, and without stopping to look and without taking any precautions for his own safety, started to run back diagonally across the car track in the direction from which he came, and in so doing ran into the car coming from the rear. It also eliminated from the consideration of the jury the evidence of the capacity of the plaintiff, and whether or not upon this evidence he was capable of contributory negligence, and, if so, whether or not he was guilty of negligence which contributed to his injury. In fact, the instruction, as given, left the jury to speculation and conjecture as to whether or not the motorman by taking his eyes from the front of his car, where it was of the greatest importance for him to keep watch in order to avoid injury to travelers on the street, might have discovered the plaintiff approaching diagonally across Church street in the direction the car was going, and, assuming that he would either go on the track in front of the car or come in contact with it, stopped the car in time to avoid injury to the plaintiff.

There is nothing whatever in the evidence which tended to prove a state of facts involving the question of the last clear chance, but simply the questions: (1) Was the defendant guilty of negligence which was the proximate cause of the injury to the plaintiff; and (2) if the defendant was guilty of such negligence, did the plaintiff contribute to his own injury; and in determining this last question it was proper for the jury to be plainly instructed, that the plaintiff being an infant under the age of fourteen, but over seven years of age, was to be presumed incapable of contributory negligence, but this presumption might be overcome by the evidence and circumstances of the case tending to prove his maturity and capacity.

The contention of counsel for the plaintiff, that though there be errors in the instructions we have discussed, the errors were cured by other instructions given, and the defendant was not prejudiced, is without merit. All error is presumed to be prejudicial, and where there are conflicting or inconsistent instructions given in a case, the verdict of the jury has to be set aside and a new trial awarded, as the court cannot say whether the jury were guided by the correct or incorrect instructions; and this rule is too well established to require a citation of the authorities supporting it.

In this view of the case, the judgment of the lower court has to be reversed, and the cause remanded for a new trial. Therefore, other questions raised and discussed need not be considered; and if, upon another trial the evidence be practically the same as at the last, the jury should be instructed as indicated in this opinion.

The judgment of the circuit court will be reversed, and the cause remanded for a new trial.

*Reversed.*