## Richmond.

ADAMSON'S ADMINISTRATOR v. NORFOLK AND PORTSMOUTH TRACTION COMPANY.

January 12, 1911.

Absent, Harrison, J.

1.  INSTRUCTIONS—*Read as a Whole—Defects in One—Correction in Another—General Rules—Exceptions.*—Although an instruction, standing alone, may have been misleading because it stated only the familiar doctrine of concurrent negligence, without stating its qualifications, the verdict of the jury will not on that account be set aside where all needed qualifications were set forth in other instructions given by the court. Instructions are to be read as a whole, and defects in one instruction may be cured by a correct statement of the law in another, and if, when read as a whole, it can be seen that the jury could not have been misled, their verdict will not be disturbed, even though one or more of them may have been defective.

2.  INSTRUCTIONS—*Conflicting Theories—Case at Bar.*—When two theories of a case are presented by the evidence, upon one of which the jury has been sufficiently instructed, it is error to refuse an instruction based upon the other theory of the case, which, if sustained, would require a different verdict. In the case at bar, two theories were presented by the evidence, but the jury were properly instructed on both.

3.  NEGLIGENCE—*Contributory Negligence—Sudden Peril.*—A man confronted with a sudden peril occasioned by the fault of another may act negligently, and his negligence may cause his death, yet the negligence is not, in the eye of the law, the proximate cause of the injury, because a man thus placed by the fault of another is not required to exercise the presence of mind which is required of a reasonably prudent man under ordinary circumstances.

4.  INSTRUCTIONS—*Application to What Counts of Declaration.*—If an instruction properly states the law applicable to the facts which the plaintiff has pleaded and undertaken to prove, it need not

tell the jury to which count of the declaration it is applicable, in the absence of a request to that effect, or some circumstance rendering it necessary.

5. APPEAL AND ERROR—*Plaintiff in Error as Demurrant.*—A plaintiff in error occupies the position of a demurrant to the evidence, and this court cannot consider his countervailing evidence to sustain his theory of the case.

6. APPEAL AND ERROR—*Verdicts—Conflicting Theories—Proper Instructions.*—Where two theories of a case are presented by the evidence, each supported by sufficient evidence to sustain a verdict, and the case has been fairly submitted to the jury by proper instructions upon each of the theories, the verdict of the jury will not be set aside.

7. NEW TRIAL—*After-Discovered Evidence—Locating Witnesses.*— Where the testimony of witnesses is well known to a party and his counsel, but he makes no motion for a continuance, and elects to go to trial without them, although the subpœna is returned "not found," the discovery of their whereabouts after verdict is not ground for setting aside the verdict for after-discovered evidence. This is not the discovery of evidence since the trial.

8. VERDICTS—*Finding for Defendant When There are Two Defendants—Uncertainty—Venire De Novo.*—Where there are two defendants in an action of tort, but the record fails to disclose any connection whatever of one of the defendants with the wrong complained of, and the whole enquiry at the trial was directed to the liability of the other defendant, a verdict simply finding "for the defendant" is decisive of the case. The reasonable intendment is that "defendant" was unintentionally used for "defendants," and a *venire de novo* should not be awarded on account of the uncertainty of the verdict. A verdict should not be set aside for the mere want of form in its wording, when the meaning of the jury can be satisfactorily gathered from the verdict.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*R. Randolph Hicks* and *Vincent Boss*, for the plaintiff in error.

*W. H. Venable* and *Munford, Hunton, Williams & Anderson*, for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The Norfolk and Portsmouth Traction Company owns and operates a double track electric railway, running between Ocean View, Norfolk couny, Virginia, and the city of Norfolk. On the night of July 19, 1907, George E. Adamson boarded car No. 163 of said company at Ocean View, *en route* to Norfolk city, which car was a summer car with seats running horizontally across the car. Cars going from Ocean View to Norfolk city run from north to south on the western of the double tracks while the cars running from Norfolk city to Ocean View run in a northerly direction on the eastern track. The car on which Adamson was seated was moving on the westerly track to Norfolk city, and he was on the middle bench of the car, next to the guard rail extending the whole length of the easterly side of the car about on the level with the backs of the seats, the purpose of this guard rail being to prevent passengers from getting on or off the car on that side, because of the danger of contact with a car running in an opposite direction on the other track.

When the car on which Adamson was a passenger approached Seaside station, a short distance from Ocean View, about 10 o'clock P. M., it slipped its trolley and became perfectly dark, and while the conductor was making unsuccessful attempts to adjust the trolley, the car stood still near Seaside station in the dark on a dark night. While in this position another car, No. 103, was approaching on the same track from the direction of Ocean View, and some passengers seeing car 103 approaching in the rear became excited, and

some of them called out "Jump!" or "Jump off the car before you get killed!" Whereupon Adamson, apparently without looking in either direction or attempting to inform himself as to the condition of his surroundings, stood up and jumped from the east or left-hand side of the car, either over or under the guard rail, and the young lady sitting beside and travelling with him jumped just behind him, while one or two of the other passengers jumped from the right or western side of the car, the result with Adamson being, that he either alighted upon the eight-foot space between the two tracks and stumbling fell upon the eastern track, or alighted upon that track immediately in front of a car of the said company, No. 164, going to Ocean View at its usual speed, and was run over and killed. The motorman in charge of car 103 approaching car 163 (in which Adamson was a passenger) either did not see it on account of the darkness, or was going so rapidly that he was unable to stop his car before it struck car 163. The car 164, bound for Ocean View, was plainly visible to passengers on the south-bound car 163, for the reason that the point at which 163 slipped its trolley is at the approach of a curve, the radius of which is 900 feet, but, as it would seem, if a passenger on car 163 had seen car 164 approaching, it would have been impossible for him to have known whether it was on the eastern or the western track, hence the evidence does not show whether Adamson jumped because of fear of a collision with the car approaching in the rear, or from fear of a collision with the car approaching on the north-bound track. Plaintiff's declaration, in its first count, however, charges the defendant company with negligence in the operation of car 103 approaching in the rear of car 163, and that this negligence of the defendant company brought about such a condition of imminent peril as caused Adamson to jump in front of the moving car.

Whether or not there was such a condition of danger or imminent peril, caused by the negligence of the defendant com-

pany, as to relieve Adamson of the duty of exercising care for his own safety and protection, was the issue presented to the jury at the trial of this case, and under the instructions of the court (six of which were asked by the plaintiff) the verdict of the jury was for the defendant. and judgment thereon entered by the court. To that judgment the plaintiff below, H. M. Boss, Jr., administrator, c. t. a. of said Adamson, obtained this writ of error, and assigns the following errors: (1) misdirection of the jury by the court; (2) the verdict was contrary to the law and the evidence; and (3) the court should have sustained the motion in arrest of judgment, and for a *venire facias de novo.*

The six instructions given for the plaintiff presented, and we think most favorably, his theory of the case, while instructions "F," "G" and "A" given for the defendant were intended to present its theory of the case, and they are as follows:

" 'F.' The court instructs the jury that if you believe from the evidence that the plaintiff's intestate and defendant were both guilty of negligence, and that the negligence of both caused the death of the plaintiff's intestate, then your verdict must be for the defendant, even though you may believe from the evidence that the degree of negligence of the defendant was greater than that of the plaintiff."

" 'G.' The court instructs the jury that the law requires of every man that he exercise a reasonable amount of care for his own safety. If you believe the plaintiff has failed to prove by legal evidence that Adamson ever saw the car approaching the car on which he was seated from the rear, and if you believe from the evidence that Adamson was not in danger of being injured if he had remained seated, but that he jumped directly in front of an approaching car simply because he heard some women holler 'jump,' without stopping to think or to take any care at all for his safety, and that his death was caused by an absolutely unguarded and reckless act of his own, your verdict should be for the defendant."

" 'A.' The court instructs the jury that the basis of an action of this kind is negligence, which negligence cannot be presumed from the mere fact that the plaintiff's intestate was run over by a car of the defendant. Before the plaintiff can recover in this case, he must prove by a preponderance of the evidence, not only that the defendant was negligent but that it was negligent as charged in the declaration, and that the negligence charged was the proximate cause of the death of the plaintiff's intestate. If, after hearing all the evidence, you believe it is just as probable that the accident happened in some other manner and from some other cause as from that charged in the declaration, your verdict must be for the defendant."

These instructions are excepted to, first, because "F" propounds only the familiar doctrine of concurrent negligence in actions of this character, but which is entirely misleading and improper in this case.

It is very true that it is a well settled rule of law, that "A man confronted with sudden peril may act negligently and his negligence may cause his death, yet this negligence is not, in the eye of the law, the proximate cause of the injury, because a man thus placed, through the fault of another, is not required to exercise the presence of mind which is required of a reasonably prudent man under ordinary circumstances;" but there is another equally well settled rule, viz.: that instructions in a given case are to be read as a whole, and when so read if it can be seen that the instructions could not have misled the jury, their verdict will not be disturbed, even though one or more of the instructions were defective; and that defects in one instruction may be cured by a correct statement of the law in another. *Washington, &c., R. Co.* v. *Lacy,* 94 Va. 460, 26 S. E. 834; *Washington, &c. R. Co.* v. *Quayle,* 95 Va. 741, 30 S. E. 391. And although an instruction, standing alone, may have been misleading, the verdict of the jury will not on that account be set aside, where it appears that the

objection thereto was corrected by other instructions given by the court. *Russell Creek C. Co.* v. *Wells*, 96 Va. 416, 31 S. E. 614; *City of Richmond* v. *Wood*, 109 Va. 75, 63 S. E. 449.

With respect to defendant's instruction "F," we deem it only necessary to say, that it was but a part of the instructions defendant asked, presenting its theory of the evidence, viz.: that while there was a slight collision between the car on which Adamson was riding and the car which approached it from the rear, there was as a matter of fact no danger real or reasonably to be expected, such as to create the "terror of an emergency," leaving it to the jury to say whether there was contributory negligence on the part of Adamson. All the needed qualifications of the law necessary to meet the plaintiff's theory of the case were fully presented in the other instructions given by the court at the instance of the plaintiff.

Instruction "G," given for the defendant, is excepted to on the ground that its opening lines gave an incorrect standard, and the balance, when analyzed, is confusing and erroneous. In other words the ground of objection to the instruction is first, that the standard of care it laid down was erroneous, in that it required of every man a reasonable amount of care; second, that the instruction is limited to the theory that plaintiff's intestate did not "see" the approaching car, and it is suggested that if Adamson knew the car was coming by the sense of hearing he would have been justified in leaping from the car; and third, that the instruction uses the word "danger" rather than "apparent danger."

It will be observed that the various findings recited in the instruction as necessarily precedent to the finding of a verdict for the defendant are not in the alternative, but were all necessary to justify a verdict for the defendant. It told the jury that before they could find for the defendant they must find from the evidence in the case, that Adamson never saw the car approaching from behind, that he was not in danger of being injured, that he jumped directly in front of an ap-

proaching car, that he jumped merely on account of some women hollering "jump," and that he did not stop to think or take any care at all for his safety, and that his death was caused—not contributed to—by an absolutely unguarded act of his own.

The theory of the plaintiff, as presented in his instructions, was, that Adamson had, by the negligence of the defendant, been placed in a perilous position, where he had to adopt a "perilous alternative," or where in the "terror of an emergency," he acted wildly or negligently, and did not exercise all that presence of mind and carefulness that is justly required of a careful and prudent man under ordinary circumstances, and, therefore, he could not be held guilty of contributory negligence; while, on the other hand, it was the theory of the defense that Adamson was not placed in a position of imminent peril, or under immediate apprehension of danger by the negligence of the defendant or its servants, but acting negligently and without any sort of care or caution for his own safety, leaped from the car he was on, where he would have been safe had he remained, directly in front of an approaching car, merely on account of some women· hollering "jump," thereby causing his death; and clearly the defendant had the right to have this theory presented to the jury by appropriate instructions, in view of the fact that there was evidence tending to sustain that theory.

"Where, in a personal injury case, the evidence is conflicting both as to the negligence of the defendant and the contributory negligence of the plaintiff, it is proper to instruct the jury on each of the points." *C. & O. Ry. Co.* v. *Christian*, 110 Va. 723, 67 S. E. 345; *Riverside Co.* v. *Husted*, 109 Va. 688, 64 S. E. 958.

"When two theories of a case are presented by the evidence, upon one of which the jury has been sufficiently instructed, it is error to refuse an instruction based upon the other theory of the case, which, if sustained, would require a different

verdict." *N. Y., &c. R. Co.* v. *Wilson,* 109 Va. 754, 64 S. E. 1060; *Norfolk Ry. Co.* v. *Higgins,* 108 Va. 324, 61 S. E. 766; *Low Moor Iron Co.* v. *LaBianca,* 106 Va. 83, 55 S. E. 532; *Richmond Pass., &c., Co.* v. *Gordon,* 102 Va. 498, 46 S. E. 772; *Wash.-Southern Ry. Co.* v. *Cheshire,* 109 Va. 741, 65 S. E. 27.

In this case plaintiff's fifth instruction presented directly his theory of the case, as made by the evidence, as follows: "When a passenger, through the negligence of a common carrier of passengers, is placed in a situation where he must adopt a perilous alternative, or where in the terror of an emergency, for which he is not responsible and for which the common carrier is responsible, he acts wildly or negligently and suffers in consequence, such negligent conduct under these circumstances is not contributory negligence, for the reason that persons in great peril are not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances."

Whatever objection might have been made to defendant's instruction "G" because of the use of the word "danger," rather than "apparent danger," was fully met by an unmarked instruction given by the court at the instance of the defendant as it would seem, and to which no objection is made here, to-wit: "The court instructs the jury that it is not sufficient for the plaintiff to prove that his intestate may have been frightened and excited. Before he can recover under the charge in this case, he must prove by a preponderance of the evidence that the circumstances created by the defendant or its servants were such as to place a reasonable man under the immediate apprehension of danger."

Defendant's instruction "A" is objected to, *first,* on the ground that it required the negligence of the defendant to be established as charged in the declaration, and led the jury to believe that the court required proof of each separate and inconsistent act of negligence contained in the four separate and distinct counts of the declaration; and, second, because

the frame of the instruction directed the attention of the jury to the count of the declaration charging negligence in the operation of the car which struck Adamson. We confess our inability so to read the instruction.

In *City of Richmond* v. *Wood*, 109 Va. 75 63 S. E. 449, it was held: "If an instruction properly states the law applicable to the facts which the plaintiff has pleaded and undertaken to prove, it need not tell the jury to which count of the declaration it is applicable, in the absence of a request to that effect, or some circumstance rendering it necessary."

The plaintiff complains generally of the defendant's instructions because of their incompleteness, i. e., the correctness of the general principles stated is admitted, but complaint is made because of the absence of qualifications to the facts of the case at bar.

A complete answer to this contention is that the defendant was entitled to, and only got in its instructions, a statement of the law applicable to the defendant's theory of the case, and whatever qualifications of the rules of law invoked was needed were fully explained in the instructions given at the instance of the plaintiff and the unmarked instruction given at the request of the defendant. *Truckers Co.* v. *White*, 108 Va. 147, 60 S. E. 630.

The next contention of the plaintiff is that the verdict of the jury should have been set aside because it was contrary to the law and the evidence, but he does not discuss this ground of error and merely states his conclusion from the evidence.

The instructions of the court fairly submitted the case upon the evidence to the jury, and the jury failed to take the view of the plaintiff, that the negligence of the defendant caused a perilous situation which was accompanied by consternation on the part of the passengers and crew aboard the car upon which Adamson was seated, and that by reason

of this condition, Adamson jumped from the car just as the collision occurred or was about to occur, and, therefore, this was not negligence on his part. Besides the fact not controverted, that all who remained on the car from which Adamson jumped escaped any sort of injury, and that the car itself was not damaged beyond a bent fender, the jury were warranted in concluding from the evidence given by plaintiff's own witnesses, that the negligence of the defendant did not cause to exist on the car upon which Adamson was a passenger such a condition of peril or danger as authorized him to adopt a "perilous alternative," i. e., he was not confronted with the "terror of an emergency," for which he was not responsible, and, therefore, his action was not justified and he was not relieved from the imputation of contributory negligence.

One of the plaintiff's witnesses does testify as to some excitement on the car, and another, whose testimony is to be considered as absolutely true in favor of the defendant since the plaintiff stands here as upon a demurrer to the evidence, after testifying to having been a passenger on the car with a number of others, including Adamson, and that the trolley pole came off and extinguished the lights, etc., says: "While we were standing there, the car being more or less crowded, but not uncomfortably so, we heard several voices, principally women, and in looking around we saw a car making towards us, coming from Ocean View. My first thought was that the car would stop before it reached us, but just as it was apparently going to stop, or at the time which it should have taken to stop, it hit us. The impact was not very great, however." Again, this same witness states: "When attention was diverted by voices of women, I turned around. My first thought was that the car would stop some distance before it reached us. Naturally I sat and waited to see what the result would be, and after it hit us the jar was so slight that it did not matter at all to me."

In *Riverside, &c. Mills* v. *Lanier*, 102 Va. 148, 45 S. E. 875, the opinion of this court by Whittle, J., says: "The case stands here as on a demurrer to the evidence, and it is beyond the province of this court to follow counsel for the plaintiff in error in his discussion of the countervailing evidence upon which he relies to sustain his theory of the case."

There is other evidence in the record, which we do not deem it necessary to review, tending to prove, as the jury doubtless concluded, that the situation created by the defendant's negligence was not such as to compel Adamson to adopt a "perilous alternative" or confront him with the "terror of an emergency," whereby he was relieved of the duty of exercising due care and caution for his own safety, and that his death was due to his own careless and reckless conduct and not to the negligence of the defendant.

It is further contended for the plaintiff that he was entitled to a new trial, because of "after-discovered evidence." When we turn to the bill of exception which presents this alleged error, we find that the motion was made, not because of "after-discovered evidence," but because of the late discovery of the residence of certain witnesses, whose testimony was well known to the plaintiff and his attorneys. It also appears from the affidavits, the basis of this motion, that the so-called "after-discovered evidence" was evidence of witnesses who testified at the coroner's inquest over the body of Adamson, at which one of plaintiff's counsel was present, representing the estate of the decedent.

In *Wynne* v. *Newman's Admr.*, 75 Va. 811, the opinion by Burks, J., says, that "courts of law sometimes grant new trials, but always with great reluctance, and never except under special circumstances," and the rule stated in the opinion as applicable to a motion for a new trial based on after-discovered evidence is that, in order to justify the granting of the motion, the first requisite is that the evidence must have been discovered since the trial.

Here, as we have seen, the case is merely a subsequent loca-tion of absent witnesses, whom the plaintiff had summoned, but who did not attend the trial, and notwithstanding the ·return of the subpoena "not found," the plaintiff made no motion for a continuance, and elected to go to trial. Under these circumstances, clearly the court did not err in over-ruling the motion for a new trial because of "after-discovered evidence."

The remaining assignment of error is to the refusal of · the court to sustain a motion for a *venire facias de novo*, based substantially upon the ground that the verdict is un-certain, it being "for the defendant," while in fact there were two defendants named in the declaration.

There were two defendants named in the declaration, The Norfolk and Portsmouth Traction Company, and the Nor-folk Railway and Light Company, but the record in no way discloses any relation or connection whatsoever of the Norfolk Railway and Light Company with the acci-dent stated in the declaration, or with the properties con-cerned. Moreover, the whole inquiry at the trial was directed at the Norfolk and Portsmouth Traction Company as the de-fendant, and the plaintiff's instructions all relate to one de-fendant, his sixth naming the Norfolk and Portsmouth Trac-tion Company as follows: "Therefore, if the jury believe from the evidence that such foresight, prudence and skill were not exercised by the employees of the Norfolk and Ports-mouth Traction. Company, and that as a result," etc.

The verdict was plainly intended by the jury as a finding upon the issue made by the defendant's plea of not guilty, or as said in the case of *Porter* v. *Cotney, &c.*, 3 Ala. 314, a finding that the plaintiff was not entitled to recover. In that case, the verdict was: "We, the jury, find the issue in favor of the defendant," and the appellate court held, that "the reasonable intendment is that defendant was unintentionally used for defendants and the verdict is decisive of the case."

In *Peters* v. *Johnson*, 50 W. Va. 544, 41 S. E. 190, 88 Am. St. Rep. 909, 57 L. R. A. 428, the opinion says: "Verdicts are to be favorably construed, and, if the point in issue is substantially decided by the verdict, it is good, and when the meaning of the jury can be satisfactorily collected from the verdict, upon the matters involved in the issue, it ought not to be set aside for irregularity or want of form in its wording." See also 29 Am. & Eng. Enc. L. (2nd ed.), p. 1017, *et seq.*

We are of opinion that there is no error in any of the rulings of the circuit court complained of, and its judgment is affirmed.

*Affirmed.*