# Richmond

## Cape Charles Flying Service, Inc., et al. v. Katherine Lee Nottingham, etc.

April 26, 1948.

Record No. 3317.

Present, All the Justices.

The opinion states the case.

*Tazewell Taylor, Tazewell Taylor, Jr., William F. Ayres* and *I. W. Jacobs,* for the plaintiffs in error.

*Benjamin W. Mears, L. H. Mears* and *Charles M. Lankford, Jr.,* for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

This writ of error brings under review the record of a trial which culminated in a judgment on a verdict of $20,000,

compensation for personal injuries sustained by plaintiff when struck by the propeller of an airplane operated by defendants.

The Cape Charles Flying Service, Inc., hereinafter referred to as defendant corporation, owns a landing field just east of the town of Cape Charles, Virginia, and is engaged in the business of hiring planes, training pilots, etc. Richard Thomas Cavedo was an eighteen-year-old Richmond high school student. He had only fifty hours flying credit, and since December, 1945, has held a pilot's license issued to him by the Civil Aeronautics Administration. At the time of the accident he had not received a license to operate planes in Virginia. He was not a regular employee of defendant corporation, but on the day of the accident he had flown a plane from Richmond to Cape Charles, and was employed by defendant corporation as a pilot for that afternoon.

On February 22, 1946, the president and the general manager of defendant corporation, in order to advertise the business of the corporation and create a greater interest in pilot training, invited the members of the junior and senior classes of Cape Charles High School to visit the landing field and ride in the planes.

Plaintiff, Katherine Lee Nottingham, sixteen years of age, and Betty Ames Ewell were among the many students who accepted the invitation. The students were compelled to take turns in getting seats on the three planes which defendants were operating. Finally Kitty and Betty were directed to get in a "cub" plane which had only two seats. The front seat was occupied by the pilot, Cavedo, and the two girls were crowded together in the rear seat. There were two braces called "struts" on each side, fastened to the body of the plane just behind the pilot's seat and extending to within a few feet of the tip of the wings.

When the plane landed, Kitty got out first and after she left the plane, the revolving propeller struck her inflicting the injuries for which she claims damage in this action. She did not recall anything that occurred from the time

the plane taxied to a stop until she was *en route* to the hospital.

Defendants' first assignment of error is based on the refusal of the trial court to strike the evidence and later to set aside the verdict, on the ground that the evidence was not sufficient to convict defendants of negligence; and, even if such negligence was proved, plaintiff was guilty of contributory negligence as a matter of law.

The rule, that a litigant who has obtained a verdict approved by the trial court is entitled to have the evidence and all fair inferences therefrom considered in the light most favorable to him, will be observed in the following discussion.

The evidence for plaintiff shows that she was only sixteen years of age, that this was her first ride in an airplane, and that during the ten minutes that she was in the air the pilot engaged in "stunt flying" and attempted the "barrel roll." The pilot stated to Kitty and Betty that he could not complete a barrel roll because there was an extra passenger aboard, but the plane was permitted to dip or drop at frequent intervals which created the sensation of riding in a fast moving elevator. As a result of this operation of the plane the two girls became more or less dizzy, excited and upset. Plaintiff thought she might not be able to walk when she alighted. When the plane stopped, it was facing N. N. E. with its tail toward the parked cars of the guests of defendant corporation, one of which cars plaintiff had driven to the field. The propeller was permitted to idle and was revolving at five hundred revolutions per minute. Plaintiff, without aid, warning, or direction, from defendants, crawled out of the plane on its right side behind the pilot, stepped on the ground under the wing four or five feet behind the idling propeller, and left the plane at an acute angle toward the front. After she had taken two or three steps she turned her head over her left shoulder to speak to the pilot or Betty and was struck in the face by the revolving propeller. She fell at the feet of Betty who was getting out of the plane behind her.

■ We find no error in the refusal of the trial court to strike the evidence, or to set aside the verdict, as evidence for plaintiff tends to prove that defendants were negligent in failing to exercise ordinary care in operation of the plane to prevent or minimize the known tendency of some persons inexperienced in flying to become nauseated, dizzy, or mentally or physically upset in the course of the flight; and that defendants failed to exercise ordinary care to warn plaintiff on alighting of the danger of the revolving propeller, or to direct her to a place of safety. *Curtiss-Wright Flying Service* v. *Williamson* (Tex. Civ. App.), 51 S. W. (2d) 1047, Anno. 99 A. L. R. 191, 83 A. L. R. 365; 6 Am. Jur. 37.

Defendants contend that even if they were negligent the evidence convicts plaintiff of contributory negligence as a matter of law.

The evidence for defendants tends to support this contention. C. P. King, president of defendant corporation, and Richard T. Cavedo, the pilot, testified that when plaintiff alighted from the plane on its right side, she walked in an apparently normal manner to the rear and around the tail of the plane, turned, and came up on the left side to a point approximately ten feet in front of the plane, where she paused, deliberately turned around, and walked back into the revolving propeller. When she was six feet from it, the pilot yelled, "Look out for the propeller," and cut the switch, but not in time to stop the propeller before it struck plaintiff.

■ The evidence for plaintiff presents quite another picture. It tends to prove that when the plane stopped plaintiff was somewhat excited or slightly dizzy. In this abnormal condition she crawled out of the plane on the right side in front of the "struts," leaving the body of the plane at an acute angle and walking in a stooped position under the wing four or five feet. She turned her head to the left and was struck by the propeller. While the noise from the revolving propeller could be heard for a distance of several

hundred feet, it could not be seen, and plaintiff was approaching it at an angle from the rear. Under these circumstances the jury had a right to find or to believe that the plaintiff was not in a normal condition and hence was unconscious of the danger, did not hear the noise, or, if she did, was not in a mental condition to properly evaluate the situation.

This conflict on the question of plaintiff's contributory negligence raised an issue which was properly submitted to the jury.

Defendants' second assignment of error is based on the action of the trial court in giving the following instructions for plaintiff:

"The Court instructs the jury that it was the duty of the pilot, Richard Cavedo, to keep a proper look-out for the plaintiff, Kitty Lee Nottingham, and if you believe from the evidence that he either saw, or by the exercise of ordinary care, should have seen her peril in time to have avoided the injury, then you must find a verdict for the plaintiff."

Defendants state their objection to this instruction as follows:

"The vice of this instruction lies in the fact that the uncontradicted evidence is that Cavedo, the pilot, as soon as he saw the plaintiff's peril took every means within his power to avert the injury. He both shouted a warning and at once made an effort to stop the propeller. The whole incident occurred in less time than it takes to narrate it."

This argument is based on the evidence for defendants and entirely ignores the evidence for plaintiff. The testimony for plaintiff is that she alighted from the plane a few inches back of the pilot, crawled over the landing gear, and walked slightly to the right and in plain view of the pilot who, in the exercise of ordinary care, could or should have seen her in time to warn her of the danger or to have stopped the propeller.

Defendants' third assignment of error is based on the

refusal of the trial court to give, at their request, instructions 6d, 7d, 8d, and 10d.*

The instructions while containing correct principles of law, contain statements of abstract principles not founded upon any evidence in the record. When there is substantial evidence introduced which tends to prove that plaintiff's injuries may have resulted from one of two causes, for one of which the defendant is responsible and for the other of which he is not responsible, such defendant is entitled to have the jury told that the plaintiff must fail if his evidence does not prove that his damages were produced by the negligence of defendant; and he must also fail if it appears from the evidence just as probable that damages were caused by the one as by the other because the plaintiff must make out his case by a preponderance of the evidence. See *Honaker* v. *Whitley*, 124 Va. 194, 97 S. E. 808; *Chesapeake, etc., R. Co.* v. *Whitlow*, 104 Va. 90, 51 S. E. 182; *Gordon* v. *Funkhouser*, 100 Va. 675, 42 S. E. 677.

No evidence was introduced tending to show that an act of God or the negligence of a third party was

---

*INSTRUCTIONS REFUSED.

*6d.* "The Court instructs the jury that if they believe from the evidence that the injury of which the plaintiff complains might have been due to either of two causes, for one of which the defendants might have been responsible and for the other of which they were not responsible, and if they are unable to determine which of the two said causes occasioned the injury complained of, they shall find for the defendants."

*7d.* "The Court instructs the jury that before they can render a verdict in favor of the plaintiff against the defendants they must find from the preponderance of the evidence that the injury of which she complains was the proximate result of negligence on the part of said defendants and not due to some other cause, and if the same may just as properly be attributable to some other cause as to the negligence of said defendants, if any there was, they cannot award damages against said defendants, nor are they permitted to allow damages which are speculative, remote or contingent. Damages must be proven and cannot be presumed."

*8d.* "The Court instructs the jury that damages must be proven and cannot be presumed; and that they should not take into consideration anything as an element of damages which is remote, imaginary, uncertain or speculative. They are further instructed that in order for the plaintiff

responsible for the accident. It is conceded that plaintiff was injured by a machine owned by defendant corporation and operated by its employee. The dominant issues on the question of liability were, (1) whether defendants were guilty of negligence, and (2) whether plaintiff was guilty of contributory negligence. These issues were fairly submitted to the jury in the five instructions given for plaintiff and the six instructions given for defendants. Every other pertinent principle of law stated in the four instructions refused was covered in the eleven instructions given. To have given the four instructions refused would have tended to confuse the jury and would have served no useful purpose.

Defendants further contend that the verdict of the jury is so vague and uncertain that no proper judgment can be entered thereon.

The verdict, as written and returned by the jury, is as follows:

"We, the jury, find in favor of the plaintiff, and do direct the defendant in the case to pay to the plaintiff the

to recover against the defendants, she must establish by a preponderance of the evidence:

"1. that the defendants were guilty of negligence as alleged in the notice of motion, and

"2. that the injury of which the said plaintiff complains is the proximate result of said negligence, and not due to any other cause— and the jury are further instructed that if they believe from the evidence that the injury of which the plaintiff complains was due to some cause other than the negligence of the defendants, their verdict shall be in favor of the defendants."

*10d.* "The Court instructs the jury that the burden is on the plaintiff to prove that the defendants were negligent in one or more of the particulars named in the notice of motion for judgment, and that such negligence was the proximate cause of the injury complained of, and that this must be proved by a preponderance of the evidence, that is, the evidence of the plaintiff must outweigh the evidence of the defendant. However, if you believe that the plaintiff was negligent and that her negligence was the proximate cause of the injury, you cannot find a verdict in her favor, but you must find a verdict for the defendants. If you believe that both parties were negligent and that the damage resulted from their combined negligence, then you cannot weigh the negligence of the one against that of the other, for the negligence of the plaintiff bars a recovery under such circumstances, and you must find for the defendants."

sum of $20,000.00 for damages incurred in the accident in question."

It will be noted that the jury used the word "defendant" in the singular while, as a matter of fact, there were two parties who actively participated in the defense of the case. The following extract from the record shows what occurred when the jury came in the courtroom with their verdict:

"The Court: Gentlemen, have you any questions to ask about that? The verdict is written on an ordinary piece of paper. Would you like the Clerk to write it in the proper manner on one of the papers in the suit?

"Mr. Taylor (of counsel for the defense): We should prefer to give no indication of our wishes.

"The Court: Poll the Jury.

"The Court: So say you all, gentlemen.

"Gentlemen, that seems to complete your service in this matter."

In *Thompson* v. *Lynchburg*, 155 Va. 1122, 156 S. E. 392 and in *Williams* v. *Commonwealth*, 153 Va. 987, 988, 151 S. E. 151, we said that it is the duty of trial courts "to see that the jury is not discharged upon the return of an illegal verdict. In such event they should be properly instructed, and not discharged (except for some good reason) until they have found and returned a legal verdict upon which the appropriate judgment can be based. This court will also go far in the disregard of defects in verdicts which have been accepted by the trial courts, but from which notwithstanding such defects, the real finding of the jury may be determined, though it may not be accurately couched in the technical language of the law. It is always necessary, however, before a judgment can be entered upon a verdict, that it appear just what the jury found or intended to find."

The precise question presented is whether the court under circumstances disclosed by the record can fairly construe the word "defendant" in the verdict to be used as a collective noun and to include both defendants.

The same question, in reverse, was decided in *Adamson* v. *Norfolk, etc., Traction Co.*, 111 Va. 556, 69

S. E. 1055, where the jury returned a verdict "for defendant" while, in fact, there were two defendants to the action. The evidence failed to disclose any connection of one defendant with the accident. The controversy seems to have been confined to the plaintiff on one side and one of defendants on the other. Under these circumstances this court held that, when from the whole record it appears that the reasonable intendment of the jury is that "defendant" was unintentionally used for "defendants," then the verdict must be accepted as decisive as to both defendants.

■ "Verdicts are to be favorably construed, and, if the point in issue is substantially decided by the verdict, it is good, and when the meaning of the jury can be satisfactorily collected from the verdict, upon the matters involved in the issue, it ought not to be set aside for irregularity or want of form in its wording." *Peters* v. *Johnson*, 50 W. Va. 644, 41 S. E. 190, 88 Am. St. Rep. 909, 57 L. R. A. 428.

In *Grayham & Christian* v. *Roberds*, 7 Ala. 719, 720, it was held: "The use of the word 'defendants' instead of the singular, 'defendant,' according to repeated decisions, will be treated as a mere clerical mistake, upon the principle, that whenever it is apparent that the plural was unintentionally substituted for the singular, or *vice versa*, it shall not affect the regularity of the judgment." See also, *Roach* v. *Blakey*, 89 Va. 767, 17 S. E. 228; 18 C. J. 459, 26 C. J. S. 672; *Arnold* v. *Mangan*, 89 Ill. App. 327; *Clagget* v. *Blanchard*, 8 Dana (38 Ky.) 41; *West Chicago St. R. Co.* v. *Horne*, 197 Ill. 250, 64 N. E. 331; *Allen* v. *Allen* (Mo. App.), 14 S. W. (2d) 686; *Burden* v. *Gates*, 188 Ga. 284, 3 S. E. (2d) 679; *Bacon* v. *Schepflin*, 185 Ill. 122, 56 N. E. 1123; *Fishburne* v. *Baldwin*, 46 W. Va. 19, 32 S. E. 1007; *Williams* v. *Ewart*, 29 W. Va. 659, 670, 2 S. E. 881.

The relationship between the two defendants in the case under consideration was that of master and servant. The testimony for plaintiff establishes the negligence of the servant (1) in the operation of the plane, (2) in failing to stop the propeller while passengers were alighting, and (3) in failing to caution or warn plaintiff of the danger of the

revolving propeller when he saw or should have seen her as she alighted from the plane and started towards the propeller. This testimony, if accepted, makes defendant corporation liable to plaintiff on the principle of *respondeat superior*.

The intention of the jury to return a verdict in favor of the plaintiff is expressed in the first portion of the verdict in clear, unambiguous language. The last portion states the amount of recovery to which the jury believed the plaintiff to be entitled and directs "the *defendant in the case* to pay to the plaintiff the sum of $20,000.00 for damages incurred in the accident in question."

Neither plaintiff nor defendants made any attempt to distinguish between the negligence of defendant corporation and the negligence of the pilot. All instructions requested by the litigants, whether given or refused, were based upon the theory that the negligence of the pilot was the negligence of the defendant corporation, and that if either was liable both were. The two defendants were represented by the same attorneys, which would not have been the case if the interests of one conflicted with the interests of the other. This attitude of the attorneys was evident to the trial court and the jury. The only reasonable inference that can be drawn from the language used in the verdict is that the singular "defendant" was unintentionally used for the plural "defendants."

Defendants' last assignment of error is based on the refusal of the trial court to sustain their motion for a mistrial because of the following remarks of counsel made in their argument to the jury:

"Gentlemen of the jury, it could have been your child; it could have been the child of any one of your friends or acquaintances just as well as the child of Mr. and Mrs. Aubrey Nottingham."

The court in overruling this motion said:

"Gentlemen, disregard what counsel has said on the subject, 'This might have been your child.'"

We have held repeatedly that the decision of the

trial court on the question of improper argument is within its sound judicial discretion and that its ruling will not be disturbed unless the record discloses an abuse of that discretion. *McCann* v. *Commonwealth*, 174 Va. 429, 4 S. E. (2d) 768, and cases cited therein.

This question was discussed in *McLean* v. *Commonwealth*, 186 Va. 398, 43 S. E. (2d) 45. In that case we reversed the ruling of the trial court on the ground that its failure to stop counsel in his use of inflammatory language and to direct the jury to disregard the same may have led the jury to believe that the remarks were proper and approved by the trial judge. It appears in the instant case that as soon as the remarks which were inclined to be inflammatory were called to the attention of the trial judge, he immediately stopped counsel from pursuing that line of argument and directed the jury to disregard it. These facts do not show an abuse of discretion.

Plaintiff concedes that the verdict should be set aside and the judgment reversed as to Richard T. Cavedo because it affirmatively appears that at the time of the trial he was only eighteen years of age and no *guardian ad litem* was appointed for him.

The verdict will be set aside and the judgment reversed as to Richard T. Cavedo, but the judgment will be affirmed as to the defendant corporation.

*Modified and affirmed.*