16 F.3d 411
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Otis STOKES, Plaintiff-Appellant,
v.
L. GEISMAR, S.A.; Modern Track Machinery, Incorporated,
Defendants-Appellees,
and
Stihl Incorporated; Andreas Stihl; Stumec, Defendants.
 No. 93-1367.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 26, 1993.
Decided Feb. 7, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CA-92-525-3)
 David Bagley Rheingold, Walter Emroch & Associates, Richmond, VA, for appellant.
 Matthew James Calvert, Hunton & Williams, Richmond, VA, for appellees.
 William B. Kilduff, Walter Emroch & Associates, Richmond, VA, for appellant.
 James E. Farnham, Edward J. Fuhr, Hunton & Williams, Richmond, VA, for appellees.
 E.D.Va.
 AFFIRMED.
 Before WILKINS and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Otis Stokes lost his left eye when a piece of a"cut-off" disc,[1] manufactured by L. Geismar, S.A.,[2] broke off and hit him. He brought this diversity action against Geismar and Modern Track, alleging negligence, failure to warn, breach of implied warranties of fitness and merchantability, and breach of express warranties in connection with the sale of the saw and disc to his employer, Rail Tec, Inc. of Hopewell, Virginia. After completion of depositions, the district court granted the defendants' motion for summary judgment, holding that Stokes had not made the requisite showings that the defect in the disc existed at the time it was sold to Rail Tec nor that the defendant had caused Stokes' accident. We agree. Likewise, we find no error in the district court's refusal to consider an affidavit of Stokes' expert submitted after the defendants moved for summary judgment, and affirm.
 
 
 2
 * Under Virginia law, a plaintiff alleging breach of implied warranty or negligence in a products liability case must show " 'that the unreasonably dangerous condition [of the product] existed when the goods left the defendant's hands.' " Boyle v. United Technologies Corp., 792 F.2d 413, 415 (4th Cir.1986) (quoting Logan v. Montgomery Ward & Co., 219 S.E.2d 685, 687 (Va.1975)), vacated on other grounds, 487 U.S. 500 (1988). If there is more than one possible cause of injury, the plaintiff must also show that the defendant caused the injury. Id. (citing Cape Charles Flying Service, Inc. v. Nottingham, 47 S.E.2d 540, 544 (Va.1948)).
 
 
 3
 Stokes contends that his complaint and the deposition of an expert witness created genuine issues of material fact concerning these state law requirements. We review the district court's grant of summary judgment de novo. Myers v. Finkle, 950 F.2d 165, 167 (4th Cir.1991).
 
 II
 
 4
 Stokes was an employee of Rail Tec, Inc. at its plant in Hopewell, Virginia. On December 18, 1991, he lost his left eye as the result of an accident which occurred while he was using a rail cutting saw with an abrasive cut-off disc. Rail Tec had purchased the saw and the cutoff disc from Modern Track. The saw uses modified hardware on a chain saw engine to drive the disc which, when spun at high speed, grinds away metal particles on rails to be cut. As this is done, the disc wears down and requires replacement. While Stokes was operating the rail cutting saw on the day of the accident, the disc ruptured and his eye was injured. At the time of discovery, the equipment in its entirety had apparently been misplaced or, in any event, was not produced, but portions of the disc were produced and examined by experts on both sides.
 
 
 5
 The circumstances surrounding the accident are unclear; no one witnessed the accident. Stokes was wearing plastic safety glasses at the time, and had recently replaced the abrasive disc on the saw. He was about one inch from completing the cut through a rail when the accident occurred. Stokes does not know what happened; he put his hand on his eye, felt blood, and went for help. Stokes' treating physician testified in his deposition that the injury was caused by a heavy blunt trauma, not a piece of flying debris. He concluded this because the eyeball had not been pierced. As a result of the accident, Stokes' eye had to be removed.
 
 
 6
 On July 6, 1992, Stokes filed suit in state court against Geismar, Modern Track, and others, alleging negligence, failure to warn, breach of implied warranties of fitness and merchantability, and breach of express warranties in connection with the sale of the saw and disc to his employer. The case was removed to the United States District Court for the Eastern District of Virginia. At the time of the district court's judgment, only Geismar and Modern Track remained in the action as defendants.
 
 
 7
 John Mason, Stokes' expert witness, testified that in his opinion, an imperfection (a twist) present in the disc[3] was due to improper manufacture and caused the disc to rupture. However, Mason also testified that there were three possible causes of the twist (two of which would have occurred during manufacture and one of which would have occurred during storage) and that he did not have an opinion as to what was the more likely cause. He testified that the disc could have twisted during post-sale storage and that the problem was just as likely caused by a storage problem as a manufacturing problem. More than two months later, Stokes submitted an affidavit of Mason's stating that the twist in the disc was caused by improper manufacture and not by handling of the disc after manufacture.
 
 
 8
 Stokes voluntarily dismissed his claims of failure to warn and breach of express warranty, and the district court granted the defendants' motion for summary judgment on the remaining claims, finding that Stokes had not shown that the defect in the disc existed at the time the disc was sold to Rail Tec or that the disc caused the accident. The court also disregarded Mason's affidavit, submitted after the motion for summary judgment, as "a last-ditch effort to create a jury question."
 
 
 9
 Stokes argues that the court erred because Mason testified that the existence of the twist in the disc demonstrated that the disc had been improperly manufactured. Stokes also points to Mason's statement that a disc could obtain some twist during vertical storage, but that such a disc would resume its flat shape in a week or two if stored again in a horizontal position. The defendants, however, correctly point out that Mason admitted that he did not have an opinion as to what caused the twist--a manufacturing problem or a storage problem--nor as to which potential cause was more likely. Moreover, Stokes presented no evidence that the disc had been stacked horizontally at Rail Tec during the weeks prior to the accident. It is, therefore, manifest that Stokes did not meet his burden of proving that the defect in the disc existed when it left the defendants' hands.
 
 
 10
 Likewise, we find no error in the district court's finding that Stokes had not satisfied his burden of showing with reasonable certainty that Geismar caused his injury. Boyle, 792 F.2d at 416. Stokes simply did not establish that other plausible explanations for the accident had been ruled out.
 
 
 11
 Finally, in our view, the district court properly relied on Rohrbough v. Wyeth Lab., Inc., 916 F.2d 970, 976 (4th Cir.1990), in refusing to consider the Mason affidavit. In Rohrbough, we held that the district court was justified in disregarding an expert's affidavit which had been attached to the plaintiff's response to defendant's motion for summary judgment, given the conflicts that existed between it and his deposition testimony. As in Rohrbough, Mason's affidavit is in direct conflict with his testimony and "may not represent the considered opinion of the [expert] himself, but ... [could be] an effort on the part of the [plaintiff] to create an issue of fact." Id. We cannot say that the court abused its discretion in refusing to consider the affidavit. Persinger v. Norfolk & W. Ry., 920 F.2d 1185, 1187 (4th Cir.1990).
 
 
 12
 In view of the above, the district court's judgment is affirmed.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 A cut-off disc is a component of a rail cutting saw
 
 
 [2]
 Geismar is the parent corporation of Modern Track Machinery, Inc., who sold the product to Stokes' employer
 
 
 [3]
 The defendants do not dispute the existence of the twist