## ADAMS v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

STREET RAILROADS—INJURY TO CHILDREN—NEGLIGENCE.

A boy of 6, of average intelligence, was permitted by his mother to play after dark on the street in front of the house, under her control. The father was on the opposite side of the street, and the boy, while his mother was temporarily in the house, and the father was not watching, started from the curb to cross to the father. The place was 50 to 60 feet from the crossing, and a street car, 37 to 75 feet away, was approaching at about 6 miles an hour, its usual rate in that locality. The curb was 18 feet from the track, and the view of the car was unobstructed. The boy struck the car at the edge of the fender or the dashboard, and was injured. The motorman was prudently operating the car, and stopped it in 20 feet. *Held*, that the company was not liable.

Appeal from trial term, Kings county.

Action by Joseph Adams, an infant, by Louis Adams, his guardian ad litem, against the Nassau Electric Railroad Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Henry Yonge, for appellant.

S. S. Whitehouse, for respondent.

HATCH, J. The question presented in this case is somewhat close, and yet we are clearly of the opinion that, upon the facts appearing in the present record, the recovery may not be upheld. There is very little conflict in the testimony, and the case may be disposed of upon substantially undisputed facts. The child who was injured was 5 years and 11 months old, and possessed of the average intelligence of children of that age. His parents resided upon Central avenue, over which the defendant operates its street cars. The accident occurred after dark, about a quarter past 8 in the evening. The child had been permitted by its mother to play upon the street in front of the house, under her control; came into the house for a drink of water, and receiving the same from its mother, and left the house ahead of the mother, who continued to remain therein until the happening of the accident. The child's father was upon the opposite side of the street, having the custody of another one of his children. The child who was injured stood upon the curb of the street, and, making discovery of its father upon the other side, started to go to him, although the father was unaware of such fact. The place where the child started to cross the street was 50 to 60 feet above Halsey street, which intersected Central avenue. At this time a car was approaching Halsey street, and would pass where the child stood when upon the curb, and was then distant from the point occupied by the child from 37 to 75 feet, the witnesses varying in this regard. The fair preponderance of all the testimony is that the car was proceeding at the rate of about 6 miles an hour, which was the usual rate at which it ran in that locality. Between the curb of the street

and the rail of the track on which the car was running was about 18 feet. There was no crosswalk at this point, but the street was free from vehicles and other obstructions. There was some dispute whether the motorman sounded any bell when he was passing along the street until about the time of the accident, but the view of the approaching car was unobstructed. The child left the curb, and, without any apparent care as to its surroundings, continued on its way across the street, and came in contact with the car, either at the edge of the fender or the dashboard. The preponderance of the evidence, especially that of the plaintiff, was that the contact was at the dashboard. The boy was knocked down, and received the injuries for which a recovery has been had.

It is quite evident from all the testimony that the motorman was prudently operating the car. The car was not near a street crossing, and nothing intervened in front of it which required the ringing of the bell or the application of the brake. The obligation resting on the defendant was to operate the car at this point with reasonable care and prudence. Extraordinary care would not apprise the motorman that a child standing upon the curb of the street would suddenly leave the same, and rush headlong against the car. It is the rule that a child non sui juris may not be guilty of negligence except by the act of the parent or person having the control and custody of him. But, while this is the rule, it is equally well settled that such child may not be the heedless instrument of its own injury. Wendell v. Railroad Co., 91 N. Y. 420. It has been said in the Wendell Case that "if the infant be of tender years, and not sui juris, the negligence is imputable to his parents or guardians." And in Weiss v. Railroad Co., 33 App. Div. 221, 53 N. Y. Supp. 449, it is said that, whatever be the age of the infant, he is not in law to be excused from exercising some care when in a known place of danger. "If he fails to do this, and is so young that he is termed in law non sui juris, then his negligence is imputed to his parent or guardian." These statements of the law seem to be not entirely logical; at least, they involve unnecessary circuity in the imputation of negligence. We had supposed that there was but one of two conditions,—the negligence of the child, when sui juris; the negligence of the parent or custodian, when non sui juris. If the latter condition exist, it is the negligence of the parent or custodian that is to be imputed to the child; but in the statements we have quoted this seems to be reversed, and the negligence of the infant, although unable to be guilty of negligence, is imputable to the parent. Of course, to have the act of negligence operate as an efficient cause, we suppose that, having imputed the negligence of the child to the parent, it immediately becomes necessary to impute the same negligence of the parent to the child. Logically, if the parent be not negligent, and the infant cannot be, then there can be no imputation either way; or, if there can be imputation of negligence, it must be from the parent to the child, and not the reverse. We conceive, however, that an act of the child which would be negligence in an adult may not be imputed to the parent when the latter's acts are not negligent; that what is meant by the requirement that an infant non sui juris must exercise some care

has reference to the obligation which the party inflicting an injury upon such infant is under towards it, and is to be considered for such purpose. Children early learn that contact with some things will produce pain and injury, and their education with respect thereto proceeds with considerable rapidity. While they lack judgment to act with care and circumspection in respect of such matters, yet they are quite sensible of the necessity of avoiding contact with many objects which experience has taught will inflict harm. A child will not usually place its hand in the fire, as it early learns that if it does it will be burned, and it will not voluntarily run into a moving car, being sensible that pain will follow. A child of sufficient maturity to play about the streets, and of the age of this child, may be assumed to know that injury would result to him from such an act. These well-known facts people engaged in traffic upon the streets may reasonably and fairly take into consideration in operating their vehicles thereon.

So, in the present case, we think the motorman had the right to assume that this infant would not voluntarily leave the walk at the side of the street, and deliberately run into the car. Consequently he was not, in the exercise of reasonable and ordinary care, required to operate his car in contemplation of such a contingency. He was undoubtedly required to be upon his guard against the heedless action of immature children, but such reasonable care did not require the assumption that this infant would run into his car. At the time the child was upon the curb, the motorman was about 125 feet from the intersection of Halsey street, at which point the car was required to stop. As the car approached the point of contact with the child, it was evidently under reasonable control; for the overwhelming testimony is that it was stopped after such contact within a distance of 20 feet, and this could not have been accomplished had not the car been fairly and reasonably under control, having regard to circumstances reasonably likely to happen in that locality. If the motorman had seen the child when it left the curb, that fact would have occasioned no immediate apprehension that it would attempt to cross in front of the car; and, as the fact was that it did not reach the track until some part of the car had passed the child, we are unable to see that any act was required of the motorman to check his speed, as at no time was the child on the track in front of the car. When the child did come in contact with the car, immediate action was taken by the motorman, which resulted in its speedy stoppage. Under such circumstances, we do not think that the defendant was guilty of any negligence charging it with liability, nor do any of the cases to which our attention has been called assert such doctrine. The nearest approach to any authority supporting a recovery, under such circumstances, is found in a decision by this court in Muller v. Railroad Co., 18 App. Div. 177, 45 N. Y. Supp. 954; but in that case the facts were decisively different from those which now confront us. There the accident happened in the afternoon, in broad daylight. The evidence tended to establish, and the jury were authorized to find, that the motorman could have seen the child for a distance of over 100 feet, at a time when the child was upon the southerly track of the

railroad, in front of the car. In the present case the child was upon the curb of the street when the motorman was only 75 feet away, which is the most extreme statement as to distance given by any witness. It was never upon the track in front of the car, nor did it ever get in that position, as the car reached the point before the child did, and the child ran into the side of it. None of the other cases cited by the plaintiff add to the strength of the Muller Case in support of plaintiff's contention. It is not, therefore, necessary that any reference be made to them.

It follows that the judgment should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur.