## Richmond.

McDaniel's Administratrix v. Lynchburg Cotton Mills Co.

### January 24, 1901.

1. Master and Servant—*Personal Injury—Contributory Negligence—Infants—Maturity and Experience.*—The evidence in this case shows that the deceased, a boy twelve years and eight months old, was competent for the service he was employed to render—having both experience and capacity; that the defendant in error was not negligent in employing him on account of his youth, and was otherwise free from fault; and that the deceased came to his death as the result of his own persistent and reckless negligence, or at least was guilty of contributory negligence, with which he was properly chargeable by reason of his maturity and intelligence.

Error to a judgment of the Circuit Court of Campbell county, rendered November 8, 1899, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Fred Harper* and *A. S. Hester,* for the plaintiff in error.

*Blackford, Horsley & Blackford,* and *P. H. C. Cabell,* for the defendant in error.

Harrison, J., delivered the opinion of the court.

The only assignment of error to be considered in this case is the action of the Circuit Court in sustaining the demurrer to the evidence, and giving judgment for the defendant.

It appears that the plaintiff's intestate, a boy twelve years and eight months of age, was employed by the defendant company to sweep the aisles, and around the looms and spindles on the second floor of its cotton mill. On one side of this room was an elevator, used exclusively for carrying from one floor to another materials for the manufacture of cotton goods. The openings in each floor through which the elevator car passed were covered by sliding doors which opened and closed automatically as the elevator, which was wedge shaped at the top and bottom, passed through. Late in the afternoon, a few minutes before the hour for closing the mill, one of these sliding trap doors on the second floor was found to be out of repair, so that its automatic operation ceased, and it was fastened back so as not to obstruct the passage of the elevator car; the effect of which was to leave open the space usually covered by it. Early the next morning the defendant company commenced to repair the defect, exercising in that regard due and reasonable care, and, by the end of the day, had the door restored to its place, and in proper working order. About two or three o'clock in the afternoon of the day the door was being repaired, the plaintiff's intestate was found dead, with a wound on the head, at the bottom of the elevator shaft. The precise manner in which the intestate met his death is not disclosed by the evidence. About twenty minutes before his discovery, he was seen for the last time standing with his broom in hand within four feet of the shaft. The contention is that the defendant in error was guilty of negligence in leaving the elevator shaft open while the door was being repaired, and that such negligence was the proximate cause of the boy's death.

The large room where deceased worked was brightly lighted by numerous windows, and the open shaft, not only visible, but perfectly obvious to every one. On the side of the elevator, notices were posted which read, " Danger," " No person allowed on this elevator," and these notices were known to deceased.

The plaintiff's intestate was well grown for his age, intelligent, unusually active but mischievous and reckless. He had been in the service of the defendant in error for eighteen months, and, although his duties did not require his being within four feet of the elevator shaft, he was frequently caught by his superiors and fellow-servants playing about the elevator car as it ascended and descended, and taking risks therewith that put his life in jeopardy. Many times he was warned of the danger, and told that he must keep away from the elevator, and threatened by the superintendent, and by the floor manager, with dismissal unless he did so. During the day on which the accident happened, he had the peculiar danger of the situation pointed out to him, and was warned to keep away from the shaft. Notwithstanding this specific information and warning, he was seen repeatedly jumping across the open space made by the door being nailed back, and at other times leaning over the open shaft throwing bobbins and other things through the hole at persons working in the room below. On one of these occasions an employee caught him, pulled him away, warned him of the danger, and told him to keep away, or he would fall through.

Upon the whole evidence, the most reasonable conclusion is that the deceased came to his death by being struck on the head by the descending elevator while leaning over the open shaft engaged in one of his reckless pranks. Assuming, however, that, according to the theory of the plaintiff in error, he came to his death by falling through the elevator shaft, we are of opinion that the defendant in error was free from fault in the premises, and that the deceased came to his end as the result of his own persistent and reckless negligence. There is no question but that the deceased was competent for the service he was employed to render; he had both experience and capacity, and no negligence is imputed to the defendant for employing him on that account. Under such circumstances, the burden is upon the plaintiff in error to establish the negligence of the defendant

in error.  This the evidence wholly fails to do.  If, however, such negligence were shown, there could be no recovery in this case by reason of the contributory negligence of the deceased; his maturity and intelligence being sufficient to overcome the presumption, on account of age, that he was incapable of contributory negligence.

For these reasons the judgment is affirmed.

*Affirmed.*