**PAYNE, Director General of Railroads, Etc., v. BLEVINS.**

(Circuit Court of Appeals, Fourth Circuit.   March 21, 1922.)

No. 1881.

1. **Negligence ⟨key⟩85(2)—Contributory negligence of boy depends on age, knowledge, and surrounding circumstances.**

In determining whether a boy was contributorily negligent three tests are to be applied; his age, his knowledge, and the circumstances surrounding the case.

2. **Negligence ⟨key⟩136(29)—Contributory negligence of child for court on conclusive evidence.**

Whether a boy 13 years of age was capable of negligence contributing to his death is a question for the court, where the evidence admits of but one conclusion, and the fact is one about which reasonable minds cannot differ.

3. **Negligence ⟨key⟩136(29)—Contributory negligence of boy under 14 for court on clear evidence.**

The rule established by the Supreme Court of Appeals of Virginia that a boy under 14 years of age is presumed to be incapable of negligence, but that such presumption may be rebutted by evidence, does not prevent the court from holding him capable of such negligence as matter of law, if the evidence admits of no other conclusion.

4. **Railroads ⟨key⟩382(1)—Thirteen year old boy held capable of appreciating danger from train.**

A boy 13 years and 3 months of age, who had lived for several years adjacent to a railroad track and had worked in coal mines, and occasionally had ridden on the trains, and who was shown to be bright and intelligent, was, as a matter of law, capable of appreciating the danger of going on a railroad track in front of an approaching train.

5. **Railroads ⟨key⟩398(4)—Contributory negligence of boy going on track shown.**

In an action for the death of a 13 year old boy, who was capable of appreciating the danger of going on a railroad track, evidence *held* to show that the approaching train could have been seen and heard by him, though no warning signals were sounded, and it was backing without a headlight on the tender, so that he was negligent in going on the track in front of it.

6. **Railroads ⟨key⟩396(1)—Presumption person looked and listened does not apply, where contradicted by fact.**

The presumption that a person looked and listened as required by ordinary care before going on a railroad track does not apply, where the evidence shows he could have seen and heard the approaching train, if he had done so, but nevertheless went on the track in front of the train.

7. **Railroads ⟨key⟩398(1)—Evidence held to show cause of boy's death was speculative, not supporting recovery.**

In an action for the death of a 13 year old boy, who was found injured on the side of a railroad track shortly after a train had passed, evidence

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*held* to show that plaintiff's contention he was sitting on the track, where he could have been seen by defendant's employees in time to have avoided the accident, was contradicted by the physical facts, and that the defendant's theory that he was injured by a rock thrown by another boy, or by attempting to board the train as it came by was equally plausible, so that the cause of his death was speculative, and there could be no recovery therefor.

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Action by A. L. Blevins, as administrator of the estate of Burton Blevins, deceased, against John Barton Payne, Director General of Railroads and Agent. Judgment for plaintiff, and defendant brings error. Reversed.

See, also, 264 Fed. 1005.

Samuel K. Funkhouser and Waller R. Staples, both of Roanoke, Va. (Staples, Cocke & Hazlegrove and Smith & Funkhouser, all of Roanoke, Va., on the brief), for plaintiff in error.

William H. Werth, of Tazewell, Va., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

WATKINS, District Judge. For convenience the plaintiff in error will be designated in this opinion as defendant, and the defendant in error as plaintiff, since they occupied these positions in the trial court and are so designated in the pleadings.

This action was instituted by A. L. Blevins, as administrator of the estate of his son, Burton Blevins, for damages for the death of the latter, who was approximately 13 years and 3 months of age. It is alleged that the death was caused by the negligent operation of one of the trains of the Norfolk & Western Railway Company, then in charge of the Director General of Railroads of the United States Railroad Administration. The action was brought against both the Director General and the railway company, but upon motion was dismissed as to the latter, and judgment was recovered against the former only. There is a branch line of the railway company extending from Richlands, on its main line, to a coal operation at Jewel Ridge, a distance of seven miles; the line passing and serving several other coal operations between these two points. At one of these, termed Seaboard, plaintiff and his said son were living on August 29, 1918, when the injuries occurred. This branch line runs in a general northerly direction. About one-fourth of a mile north of Seaboard a wagon road extends north and south almost parallel with and near to the railroad track on the eastern side thereof, and on and immediately east of this highway are a number of small residences, the front portions of which are about 50 feet from the railroad track. From the roadway to the place of the accident there is an embankment several feet in height, leading up to the railroad, immediately west of which is a rocky cliff. From one of the aforementioned residences the partitions had been removed, and, on the night of the accident and for several nights prior thereto, religious services were held therein by a sect known as the "Holy Rollers,"

whose exercises, when the train passed on that night, were character-ized with considerable emotional noise; there being a general indul-gence in shouting, singing, and dancing.

Both plaintiff and his son attended these services, and, at their con-clusion, plaintiff testified that he saw his son pass out of the front door and walk on towards the railroad track, and that he did not see him again until he was found injured, some 3 to 5 minutes after the train passed. He further testified that "the train passed after the church had been dismissed; just immediately the train came, and he did not come out of the church door until after the meeting was dismissed." Mrs. Horton, one of plaintiff's witnesses, living about 100 yards north of the church, testified that "immediately after the train passed her house she slipped back on the porch and heard the noise of the people excited over finding the boy." S. W. Ball, another witness, testified that he was the first man to reach Burton Blevins in about 10 or 12 minutes after the train passed. He found the boy "lying on the east side of the railroad track with his head against the head of the ties, about square with the track, and his feet down off the bank, lying on his side, his face north." Plaintiff testified that the boy was found almost directly opposite the church door, about 50 feet therefrom, "ly-ing with his head almost against west end of cross-ties—end next to church—and body nearly at right angles to track," and that he was found from 3 to 5 minutes after the train passed. No one testified as to the movements of the boy from the time he passed out of the church until after the injury. There was a fracture of his skull, about 2 inch-es wide and 3 inches long, on the left side of his head just above the ear; the skull being crushed in and some of the brain being destroyed. The physicians who examined him found no other bruises or abrasions about his person. He was carried to the hospital, where, after linger-ing 37 days without regaining the power of speech, he died.

It is admitted "that, at and along the tracks of the railroad north and south of the place of the alleged accident, the people of that vicinity, including all ages and sexes, and at all times, whenever they desired to do so, had for many years used said track habitually as a walkway at all hours of the day and night." On the night in question the train, as was its custom, had gone up the line to Jewel Ridge, delivering cars to the various coal operations along this branch line, and as it passed the church was drifting down grade at the rate of 12 to 15 miles per hour, and consisted, at this time, only of a tender, locomotive, and caboose, proceeding in the order named. The night was dark, it was misting rain, and the train was an hour or more late. In his declaration, plain-tiff alleges that his intestate attended the religious services at the afore-mentioned church, and at their conclusion went across to the railroad track and sat down on the rail or cross-ties, and there waited for his father to come out of the church and go home; that it was long after the hour at which the engine and tender usually made its final trip, and at an hour at which it would not be expected to pass over the tracks. The allegations of negligence are to the effect:

"That while plaintiff's intestate was so sitting upon the track or cross-ties said engine and tender came along said track from some point above or north

of said church, and going down grade towards Richlands at a high rate of speed, to wit, at the rate of —— —— miles per hour; that said engine and tender was running with the tender in front; that it had no headlight in front, and had no brakeman or other employee, on the front end or elsewhere, to keep and maintain a reasonable lookout to discover pedestrians who might be upon the track at that hour; and that no employee anywhere on said engine or tender did in fact keep and maintain any sort of lookout to discover persons who might be on said track, and no such employee did in fact discover plaintiff's intestate on said track in time to prevent injuring him; but plaintiff alleges and avers that it was a light night, and that plaintiff's intestate could have been discovered in his situation of danger, even without a headlight, in time to have prevented his injury, had a reasonable lookout to discover him been maintained by the employees in charge of said engine and tender; and plaintiff alleges and avers that the time in question was the usual time at which said religious services had been concluded every night since the said continuous revival had been in progress."

While it is also alleged that the train was drifting down grade, at a high rate of speed, making no noise and giving no warning of its approach, and that its approach was not discovered nor could have been anticipated by the deceased, there is no charge of negligence for failure to give signals or warning of the approach of the train. The essence of the charge is failure to discover plaintiff's intestate *sitting* on the track, because of neglect to maintain a proper lookout and to have such headlight in front of the train as to enable employees to discover the boy in his alleged position of peril. The accident did not occur at or near a crossing, and there is no allegation that the deceased was attempting to cross the track, or that he was walking along the track. The presiding judge held that neither the crossing signal statute (Code Va. 1919, § 3958) nor the headlight statute (Code Va. 1919, § 3976) of the state of Virginia was applicable to the case, but that the jury might determine whether the duty rested upon those in charge of the train, in the exercise of ordinary care towards persons who might be on or too near the track at or near the place of injury, to give warning of the approach of the train by either blowing the whistle or ringing the bell, and also that the fact that there was no reflector headlight at the front end of the train is of course a fact to be considered by the jury. There was no testimony that any bell was rung. While the testimony as to the blowing of the whistle was conflicting, it was admitted that there was no reflector headlight in front of the train, and although the engineer and fireman claimed that there were red and white lights on the tender at the front end of the train, this was disputed by witnesses for the other side. It was admitted by the train crew that the lights were insufficient to have discovered an object on the track for any considerable distance in front of the train or within time to have stopped the train after discovering such object.

It is not the province of this court to pass upon the preponderance of the evidence with reference to the negligence complained of. The declaration charges, and there was sufficient evidence to justify a verdict, that there was a failure to exercise ordinary care in the operation of the train. Upon conclusion of the plaintiff's evidence in chief, and also upon the completion of all the testimony, defendant made motions for the direction of a verdict in its favor upon several grounds, which need not be recapitulated in detail in this opinion. Among these

were included the claims that there was a failure to show that the injury was caused by any act of the Director General or his agents, that the question as to how the injury occurred was left entirely to speculation, and that plaintiff's intestate was guilty of contributory negligence. Upon refusal of these motions and entry of judgment a writ of error was sued out, and the case comes here on numerous assignments of error, both because of the refusal of said motions, and because of the refusal of certain of requested instructions to the jury, as well as alleged erroneous instructions. The discussion and determination of the questions involved in the three grounds above outlined for instructed verdict will so effectively dispose of all the questions involved that it will be unnecessary to take up the assignments of error in detail.

The first question to be determined is whether under the testimony the plaintiff's intestate must be presumed as a matter of law to have been capable of contributory negligence. The court declined to instruct the jury as a matter of law that he was so capable. But two witnesses were examined as to his capacity, both of these being sworn on behalf of the plaintiff. A. L. Blevins, plaintiff, himself stated that his son, Burton Blevins, was born June 5, 1905 (and was, therefore, approximately 13 years and 3 months of age at the time of the accident), and that he was—

"a bright, sprightly boy, who went to school in winter and worked in the mines in the summer, earning $2 per day."

Dr. I. W. Cunningham testified:

"Was Blevins' family physician; known Burton 3 or 4 years. He was a bright, alert boy. * * * Burton had judgment and capacity for self-care under ordinary circumstances; capable of appreciating such danger as being on a railroad track, and capable of protecting himself; just an average boy; had more experience than average boy, but never indicated that he had more 'foresight' than average boy of 13 years would have; had worked in the mines a year or more. He had fully as much ability to appreciate the danger of being on the railroad track as the average boy of 14 or 15 years old, who did not have the experience that he had in the mine and working around trains."

Burton had lived at Seaboard on this line of railroad from 1916 until his death, and his uncle, a witness for the defendant, testified, without contradiction, that the boy—

"frequently tried to climb on and off moving trains or coal cars, but not as fast as 15 miles per hour, nor try to catch a light engine, and that he never knew Burton or any one else to try to jump on a train consisting only of engine and caboose."

It should be observed that this is not a case of one employed in the running of or injured by complicated machinery, and that the question of capacity to understand danger related only to coming in contact with a moving train of cars, the danger of which must have been obvious to one even younger and of less understanding than deceased, and it is not a case of one attempting to cross a railroad track while engaged in driving a horse, automobile, or other vehicle with his attention absorbed thereby, nor is there anything to indicate that he was not in full possession of his faculties. There was a total absence of evidence to show that there was any handicap to the prudence which

should have been exercised by a bright, alert boy over 13 years of age familiar with his surroundings.

[1] In the case of Railroad Co. v. Gladmon, 15 Wall. 401, 21 L. Ed. 114, the court said:

"The rule of law in regard to the negligence of an adult, and the rule in regard to that of an infant of tender years is quite different. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. * * * Of an infant of tender years less discretion is required, and the degree depends upon his *age and knowledge.* * * * The caution required is according to the maturity and capacity of the child, and this *is to be determined in each case by the circumstances of that case.*" (Italics ours.)

This rule was reaffirmed in Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, and is recognized by the Supreme Court in all subsequent cases. It will be observed that three tests are to be applied—age, knowledge, and the circumstances surrounding each case.

[2] In applying the rule the courts of some of the states have fixed a definite age below which there is a presumption that children are incapable of contributory negligence. Some have followed by analogy the rule of the common law in criminal cases, holding that a child under 7 years of age is to be presumed, as a matter of law, incapable of contributory negligence, and that between the ages of 7 and 14 there exists such a presumption, but that the presumption may be rebutted by evidence. Some hold that, where the child is under 14 years of age, the question of capacity may be submitted to the jury for determination, but that the courts are without power to determine, however conclusive the evidence, that such infant is, as a matter of law, capable of such negligence. We can see no good reason for denying to the court in such cases the right, nor relieving it of the duty which exists in cases generally, to determine the question as one of law, where the evidence admits of but one conclusion, and where the fact involved is one about which reasonable minds cannot differ. As was said in the case of North Pennsylvania Railroad Co. v. Commercial Bank of Chicago, 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287:

"It would be an idle proceeding to submit the evidence to the jury, when they could justly find only in one way."

See Railroad Co. v. Husen, 95 U. S. 465, 24 L. Ed. 527; Schofield v. Chicago, Milwaukee & St. Paul Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Northern Pacific Railroad Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; Christensen v. Metropolitan St. Ry. Co., 137 Fed. 709, 70 C. C. A. 657.

In the case of Tucker v. Buffalo Mills, 76 S. C. 539, 57 S. E. 626, 121 Am. St. Rep. 957, the court said:

"Whether the infant is sui juris is a question for the jury, when the evidence as to age, intelligence, and capacity leaves the question in doubt, or leaves room for more than one inference; but, when the evidence is susceptible of but one inference, it is a question of law for the court."

In the case of Adams v. Nassau Electric R. Co., 41 App. Div. 334, 58 N. Y. Supp. 543, it was said:

"What is meant by the requirement that an infant non sui juris must exercise some care has reference to the obligation which the party inflicting an

injury upon such infant is under toward him, and is to be considered for such purpose. Children early learn that contact with some things will produce pain and injury, and their education with respect thereto proceeds with considerable rapidity. While they lack judgment to act with care and circumspection in respect to such matters, yet they are quite sensible of the necessity of avoiding contact with many objects which experience has taught will inflict harm. A child will not usually place his hand in the fire, as he early learns that if he does he will be burned; and he will not voluntarily run into a moving car, being sensible that pain will follow. A child of sufficient maturity to play about the streets * * * may be assumed to know that injury would result to him from such an act."

In the case of Schoonover v. Baltimore & O. R. Co., 69 W. Va. 560, 73 S. E. 266, L. R. A. 1917F, 1, Ann. Cas. 1913B, 964, the court said:

"If the act of an infant plaintiff is so obviously dangerous that no reasonable man can truthfully say children of his age do not ordinarily know it to be dangerous and voluntarily abstain from it, there is no more reason for submitting the question of contributory negligence to the jury than in the case of an adult plainly guilty of such negligence, and there is the same reason why it should not do so. Prudence and capacity to comprehend danger are not the only elements involved. These may be clear beyond doubt, as in the case of an adult. The defensive issue raised is negligence, in which the age, intelligence, and characteristics of the plaintiff are only factors. Hence it is fallacious to say that, because these are inferior to those of an adult, the issue must be submitted to a jury. Though inferior in that sense, they may be amply and indisputably such as to hold the plaintiff to responsibility for his acts, under the circumstances of the case. * * * If the court can say, and it does, as matter of judicial knowledge, that an adult ought to know certain things and be able to take adequate precaution for his own safety, why has it not the same power to say, as a mattter of judicial knowledge, that children of certain ages are able to comprehend and avoid certain kinds of danger?"

[3] The Supreme Court of Appeals of Virginia has held that children between the ages of 7 and 14 are presumed to be incapable of contributory negligence, but that this presumption may be overcome by evidence of capacity, etc., upon the introduction of which the question is one of fact to be determined by a jury. Trumbo v. City Co., 89 Va. 780, 17 S. E. 124; Roanoke v. Shull, 97 Va. 419, 34 S. E. 34, 75 Am. St. Rep. 791; Lynchburg Cotton Mills v. Stanley, 102 Va. 590, 46 S. E. 908; Norfolk Ry. Co. v. Higgins, 108 Va. 324, 61 S. E. 766. We do not understand, however, that more is intended in these decisions than to declare a general rule of law, nor that it was intended to deny the courts the right, on undisputed proof of facts upon which but one conclusion could be reached, to determine the question of capacity as one of law. In the case of Virginia-Carolina Railroad Co. v. Clawson's Adm'r, 111 Va. 313, 68 S. E. 1003, a very intelligent boy under 14 years of age, who had lived for several years in the immediate vicinity of the railroad and was frequently about the track, was killed, and the court said:

"The evidence, which as we have seen was undisputed on the point, leaves no room to doubt that plaintiff's intestate possessed ample capacity to have appreciated the danger of his surroundings, and his own negligence approximately contributed to the accident which cost him his life."

In McDaniel v. Lynchburg Cotton Mills, 99 Va. 146, 37 S. E. 781, where a boy 12 years and 8 months old, competent for the service

which he was employed to render, was injured, the court held that he came to his death as a result of his own persistent and reckless negligence, with which he was properly chargeable by reason of his maturity and intelligence. See, also, Seaboard, etc., Ry. v. Hickey, 102 Va. 394, 46 S. E. 392, relating to an intelligent boy upward of 8 years of age.

The whole question is elaborately discussed in the following cases and notes thereto; Holian v. Boston Elevated Railway Co., 194 Mass. 74, 80 N. E. 1, 11 L. R. A. (N. S.) 166; Jacobs' Adm'r v. Koehler Sporting Goods Co., 208 N. Y. 416, 102 N. E. 519, L. R. A. 1917F, 7; Mollica, Adm'r, v. Michigan Central Railroad Co., 170 Mich. 96, 135 N. W. 927, L. R. A. 1917F, 118; Kyle v. Boston Elevated Railway Co., 215 Mass. 260, 102 N. E. 310, L. R. A. 1917F, 164; and Bothwell, Adm'r, v. Boston Elevated Railway Co., 215 Mass. 467, 102 N. E. 665, L. R. A. 1917F, 167, Ann. Cas. 1914D, 275. The conclusion reached from a review of the authorities is thus stated in the note to the Jacobs Case, supra, L. R. A. 1917F, at page 91, as follows:

"But the correct rule appears to be that, since the presumption of incapacity on the part of an infant under 14 years of age is merely a prima facie presumption, and may be rebutted by evidence of unusual capacity and experience, contributory negligence may be shown as matter of law on the part of an infant under 14 years of age, even in those states which hold that infants under that age are presumptively incapable of contributory negligence."

This statement is made in the same note:

"A clear statement, in accord with the authorities, is that in a Missouri case, in which, in holding that a 13 year old boy was negligent as matter of law, under the circumstances, in attempting to cross a railroad track without looking or listening for a train, the court said: '* * * That rule requires that a child should be judged as a child, and not as a man. But the rule does not mean that the question is always to be submitted to a jury. Children may be declared as a matter of law non sui juris at certain tender years and with certain infantile judgments. Then, again, they may be declared sui juris as a matter of law when their age, capacity, and the circumstances under which they act are all considered. It may be taken as the most enlightened and accepted doctrine in the case of infants that generally the question of their contributory negligence is one for the jury. But it is not the accepted doctrine that it may not under given circumstances be dealt with as a matter of law. If the facts are few and simple, devoid of confusion and complications, and if the danger to be avoided is so apparent as to be within the easy comprehension of a boy of 13 years of age, if that boy is shown to be of bright intelligence and of a judgment training him to caution and care in the matter in hand—we say, all these things being admitted, then there is no reason why the judge on the bench may not as a matter of law under the facts of the given case declare there could be no two opinions among reasonable men about the negligence of such a boy, measured by the standard of an ordinarily prudent boy.' McGee v. Wabash R. Co. (1908) 214 Mo. 530, 114 S. W. 33."

[4] There being no dispute as to the intelligence, experience, and familiarity with surroundings of the deceased herein, and the danger to which he was exposed being one of easy comprehension to one of his age, understanding, and experience, a danger easily comprehensible and obvious to persons of very immature age, defendant was entitled to an instruction that he was, as a matter of law, capable of contributory negligence.

[5] Was the deceased guilty of contributory negligence? This question must be answered in the affirmative, if, in the exercise of his duty to look and listen before coming upon the railroad track, he must have seen and heard the train, or must have done so in ample time to have avoided the injury after being upon the track, if, indeed, he was on the track. We are not left to conjecture in respect to the noise or visibility of the train. While no one saw the accident, there were several who saw the train and heard the noise of it, although situated in positions less favorable for both sight and hearing than was the deceased. A. L. Blevins, the father, stated that he was standing at the south wall of the church—that is, at the opposite side from which the train was approaching—and that he—

"heard the clank of the driving rods, looked and saw the train as it passed south wall, saw no headlight, only the light from the ash pan."

Mrs. John S. Horton testified:

That she lived "about 100 yards north of the church, about 50 or 60 feet from the railroad track"; that she "heard train coming half a mile away, was outside, went up steps, across porch, through two rooms, into third room, and got to baby before train actually reached her house, but ran to do so. * * * Witness was outside the house, heard train coming, went in, and covered the baby's ears to keep it from waking; train never whistled or made much noise; if it had blown, or rung bell, would have been able to hear it."

Arthur Ball, another of plaintiff's witnesses, who was a considerable distance north of the church, testified that he got off the track for the train to pass and watched it approach; was positive that there were no lights of any description. John S. Horton, Jr., and Granville Houchins testified to the same effect as Arthur Ball. S. W. Ball, another of plaintiff's witnesses, testified:

"Was sitting in the church nearly opposite the south window, about between the south window and the door on the west side on the second bench from the west wall with my back toward the track; saw through the window the train pass; heard no whistle or bell, but with the racket going on in the house at the time couldn't say whether I would have heard whistle within 100 yards just north of the church. * * * My attention was first drawn to the train by hearing it running; the shouting and dancing in the church was general."

Thus it appears that every witness for plaintiff, with the single exception of the doctor, who was not examined on this point, testified to the seeing of the train, several both to seeing and hearing it, and that two of the principal witnesses, the father and S. W. Ball, were in positions much less favorable, because of the noise in the church, for hearing the approaching train. There can be but one inference from this testimony, and that is that, if the boy had looked and listened, as was his duty to do, he must have seen and heard the train. It appears further from the testimony that at the time he was struck, if he was struck, by the train, he must have been looking in the direction of the railroad track, because the blow received was on the left side, and the boy was found on the east side of the track, along which the train had passed coming from the north.

[6] It is a general rule of law that, in the absence of evidence to the contrary, one approaching a railroad track is presumed, because of

the instincts of self-preservation, to have looked and listened for trains that might be approaching. This presumption, however, is one of fact and not of law, and does not exist where it is incompatible with the conduct of the party to whom it is sought to apply it, and such conduct may be shown either by the testimony of eyewitnesses or by evidence of the physical surroundings and other conditions at the time. Wabash Railroad Co. v. De Tar, 141 Fed. 932, 73 C. C. A. 166, 4 L. R. A. (N. S.) 352.

In Moore on Facts, § 221, it is said:

"It must be conclusively presumed that a pedestrian who stopped and listened within 6 feet of a railroad crossing could have heard a locomotive and train which struck him going at the rate of 15 miles an hour. In such a case his testimony that he did not hear the train was pronounced so contrary to the daily experience of common life, so at war with the conceded and indisputable physical facts in the case, that neither courts nor juries can, without stultifying themselves, yield to it an iota of probative force or effect. It is a proposition too monstrously improbable for rational human belief."

See, also, sections 160, 191, 280, and 556 referring to the same subject.

In the case of Baltimore & Potomac R. R. Co. v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262, the court said:

"There are few presumptions, based on human feelings or experience, that have surer foundation than that expressed in the instruction objected to. But, notwithstanding the incentives to the contrary, men are sometimes inattentive, careless, or reckless of danger. These the law does not excuse nor does it distinguish between the degrees of negligence."

In the case of Continental Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403, it is held that while it will not be presumed, without evidence, that those exposed to danger do not exercise proper care in a particular case, still the infirmities of the human mind in ordinary men are such that they often do manifest a degree of negligence inconsistent with the care required of ordinarily prudent men under the circumstances, and that when such is the case they cannot obtain reparation for the injuries, even though the railroad company be at fault. And in the case of Northern Pacific Railroad Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014, the court said:

"When it appears that, if proper precautions were taken, they could not have failed to prove effectual, the court has no right to assume, especially in face of all the oral testimony, that such precautions were taken."

And in the case of Elliott v. Chicago, Milwaukee, etc., Railway, 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068, it was said:

"But one explanation of this conduct is possible, and that is that he went upon the track without looking to see whether any train was coming. Such omission has been again and again, both as to travellers on the highway and employés on the road, affirmed to be negligence. The track itself, as it seems necessary to iterate and reiterate, is itself a warning. It is a place of danger. It can never be assumed that cars are not approaching on a track, or that there is no danger therefrom. * * * This is not a case in which one, placed in a position of danger through the negligence of the company, confused by his surroundings, makes perhaps a mistake in choice as to the way of escape, and is caught in an accident; for here the deceased was in no danger. He was standing in a place of safety on the south of the main track. He

went into a place of danger from a place of safety, and went in without taking the ordinary precautions imperatively required of all who place themselves in a similar position of danger."

See, also, Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; Schofield v. Chicago, Milwaukee & St. Paul Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542; Chicago Great Western Ry. Co. v. Smith, 141 Fed. 930, 73 C. C. A. 164; Tomlinson v. Chicago, M. & St. P. Ry. Co., 134 Fed. 233, 67 C. C. A. 218; Garlich v. Northern Pac. Ry. Co., 131 Fed. 837, 67 C. C. A. 237; 22 R. C. L. § 203.

In the case of Railroad Co. v. Houston, supra, the court said:

"The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. * * * Not even a plausible pretext for the verdict can be suggested, unless we wander from the evidence into the region of conjecture and speculation."

To the same effect is Virginia-Carolina Railroad Co. v. Clawson, Adm'r, supra; Johnson v. Chesapeake, etc., R. Co., 91 Va. 171, 21 S. E. 238; and Tucker v. Baltimore & Ohio Railroad, 59 Fed. 970, 8 C. C. A. 416.

[7] While it is true that no eyewitness testified as to the movements of the deceased after he left the church, there are still several undisputed facts as to his movements that must be borne in mind: First, he was at a point upon the railroad immediately opposite the church and nearest thereto—the point naturally to be first reached in approaching the track; second, his position, when injured, was immediately facing the track as shown by the location of the wound; third, he was not in the center of the track, but upon the east side thereof, as is shown by the position of the body and the fact that there were no other bruises or abrasions than the one wound upon the head; fourth, that if intending to use the track as a walkway, he had not carried out his purpose, but only approached the side of the railroad close enough to be injured.

It should be borne in mind that there was an embankment leading up to the railroad track and this fact, as well as his familiarity with the surroundings, advised him of his position. How long he had been in a position of danger, and the exact manner in which he was injured, if injured by the train, is left to pure speculation. It is significant that in instituting the action learned counsel for the plaintiff came to the conclusion that the case was one in which the defendant was seated in a posi-

tion of peril, which ought to have been discovered by the train crew in time to prevent the injury, and not that he was using the track as a walkway. In order to sustain this view, it is alleged that he was seated upon the track or rail waiting for his father to come out and accompany him home. In order to give force to the assertion that he was or should have been discovered in time for the injury to have been prevented, it is further alleged that it was a light night, and that he could have been discovered in his situation, even without a headlight, had a reasonable lookout been maintained by those in charge of the engine and tender. These allegations are not only not substantiated by any proof, but are wholly at variance with the testimony, which shows that the night was dark, instead of light, while the blow received contradicted any idea that the boy was seated in the position alleged. In the statement of the facts of the first trial the court said:

"The deceased was last seen, a very few minutes before the train passed, sitting on the end of a cross-tie, awake and looking west, thus presenting his right side to the track."

It was probably intended to say "looking east," as that would have been the natural position if he was waiting for his father, and the only position in which his right side could have been presented to the train. He was evidently on the east and not on the west side of the track. It will be noted that at the second trial this testimony, so obviously contradicted by the physical facts, was omitted. The theory of how the accident occurred, as set out in the declaration, must have been speculative, and, as stated, was proved erroneous by the testimony. Indeed, how the accident did actually occur is left largely to speculation. It was the theory of the defense that the boy was struck by another boy with a rock, because of some trouble which had occurred the night before, and that the position of the body and the absence of other bruises or abrasions wholly contradict the idea that the boy was struck by the train. While there was some evidence to support this view, it merely presents a question of fact, which is not to be considered in this opinion. It is mentioned only to show that the various theories as to the manner of the boy's death are based to such an extent upon inference and speculation.

In order to justify a verdict upon the particular grounds alleged in the complaint we must assume, without any evidence to support it, that the deceased was seated upon the track, and also that he had been upon the track long enough prior to the accident to have been seen by those in charge of the train, had they exercised due care, in time for them to have avoided the injury. In view of the testimony, it seems just as reasonable to assume that, if the injury was caused by the train, it was due to his suddenly stumbling upon the track as he climbed the embankment, or that, seeing and hearing the approaching train, which he was obviously facing, he might have attempted to swing it for the purpose of riding home. Either theory is as reasonable as that advanced in the declaration, and, while neither of these theories is established by the testimony, they are not so positively contradicted by admitted facts as are the allegations of plaintiff's declaration.

"Where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion." Patton v. Texas & P. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361.

"Where the evidence is sufficient only to give rise to mere conjecture in favor of the plaintiff, or to suggest merely a possibility of the truth being as claimed by him; * * * or the evidence in his favor is contrary to all reasonable probabilities, the jury are placed in a false position by being directed to determine upon which side are the major and controlling probabilities. The court in such circumstances, without a motion in that regard, should apply the law thereto and dispose of the litigation accordingly. Refusal in that regard, in face of a proper motion invoking judicial action, is no less than a denial of a right." Chybowski v. Bucyrus Co., 127 Wis. 332, 106 N. W. 833, 7 L. R. A. (N. S.) 357; Musbach v. Wisconsin Chair Co., 108 Wis. 57. 84 N. W. 36; Finkelston v. Chicago, M. & St. P. R. Co., 94 Wis. 270, 68 N. W. 1005.

See, also, N. & W. R. Co. v. Cromer, 99 Va. 763, 40 S. E. 54; C. & O. R. Co. v. Heath, 103 Va. 64, 48 S. E. 508; Sorenson v. Menasha Paper Co., 56 Wis. 338, 14 N. W. 446; Waters-Pierce Oil Co. v. Van Elderen, 137 Fed. 557, 70 C. C. A. 255; Smith v. Illinois Central, 200 Fed. 553, 119 C. C. A. 33; Carnegie Steel Co. v. Byers, 149 Fed. 667, 82 C. C. A. 115, 8 L. R. A. (N. S.) 677; Atchison, T. & S. F. Ry. Co. v. De Sedillo, 219 Fed. 686, 135 C. C. A. 358; United States v. Ross, 92 U. S. 281, 23 L. Ed. 707; United States v. Pugh, 99 U. S. 265, 25 L. Ed. 322; Manning v. Insurance Co., 100 U. S. 693, 25 L. Ed. 761.

Reversed.